### Frank Frorer v. F. S. Rowley et al., Use of, etc.

1. VERDICTS—*On Conflicting Evidence.*—Where the evidence of the side to which the verdict of the jury or finding of the trial judge was given, standing alone in the record, will support such verdict or finding, an appellate court will not disturb it, but will accept the same as decisive of the issue tried.

2. PROMISSORY NOTES—*Possession Evidence of Equitable Ownership.*—Possession of a promissory note, not indorsed by one other than the payee, affords *prima facie* evidence that the person in possession is the equitable owner.

3. SAME—*Possession Evidence of Legal Ownership.*—Where promissory notes are payable to "bearer," or to "order," possession is *prima facie* evidence of legal ownership.

4.  Same—*Possession by a Joint Payee.*—Possession by one shown on the face of a promissory note to be but a joint payee is to be regarded only as *prima facie* evidence of the title there disclosed.

5.  New Trials—*Depositions of Foreign Witnesses.*—Where depositions of witnesses in another State are read as evidence, and the opposite party introduces evidence of their general bad reputation, *it is held* that no reason is thereby afforded for surprise, or for new trial for newly discovered evidence in support of such reputation.

Assumpsit, on a promissory note. Trial in the Circuit Court of Logan County; the Hon. John H. Moffett, Judge, presiding. Finding and judgment for plaintiffs; appeal by defendant. Heard in this court at the May term, 1899. Affirmed. Opinion filed September 20, 1899.

Harts & Humphrey and King & Miller, attorneys for appellant.

James T. Hoblit, attorney for appellees.

Mr. Presiding Justice Wright delivered the opinion of the court.

This was a suit in assumpsit by F. S. Rowley and C. A. Rowley against appellant, for the use of the latter, C. A. Rowley, wife of the former, to recover one-half of a certain promissory note for $2,056, dated March 1, 1897, executed by appellant and payable to the order of Mrs. C. A. Rowley and F. S. Rowley, her husband, in one year after date, with six per cent interest, indorsed on back, " C. A. Rowley, F. S. Rowley, Jerome Rowley.   Pay First Nat. Bk. Mt. Vernon, O.   Fred D. Sturges."   Stamped on face : " First National Bank, Lincoln, Ill., Sept. 10, ' 97, paid."   To the declaration was pleaded the general issue, payment generally before the suit, and the second and third special pleas allege indorsement of the note sued on by payees and delivery to Jerome Rowley, March 18, 1897, and that afterward and before the beginning of the suit, the defendant paid to Jerome Rowley the full amount of the note.   General and special replications were filed, traversing the allegations of the special pleas, which latter were verified by affidavit.   A jury having been waived, the trial by the court resulted in a finding and judgment against appellant for $1,129.76, from which appellant prosecutes this appeal,

insisting that the finding and judgment is against the law and the evidence of the case, and that the court erred in overruling the motion for a new trial.

It appears from the evidence that F. S. Rowley and C. A. Rowley were husband and wife, having been married thirty-eight years, and have three sons, aged respectively, thirty, twenty-eight and twenty-four years. Mrs. Rowley inherited in her own right about $1,200, which it seems the husband lost in business at Chattanooga, Tennessee, after which they lived upon a farm in Clark county, Ill., belonging to Jerome Rowley, the father of F. S. Rowley, who in 1884 conveyed it to his son, and the latter, after incumbering it with a mortgage, reconveyed it to his father, and in 1889, Jerome Rowley conveyed the farm to Mrs. Rowley, she contending, in which she is supported by the three sons, that the conveyance was made to her in consideration of the $1,200 of her separate property that had been lost by her husband, and that it might be a home for the family; while Jerome Rowley and his son F. S. Rowley contended, in which they were supported by various other witnesses who testified to verbal admissions of Mrs. Rowley, that the conveyance was made in consideration of a note for $2,500, executed and delivered by the husband and wife to Jerome Rowley, with the understanding that such note was to be paid if the farm should at any time be sold. This farm, consisting of 296 acres, was sold December 30, 1896, to appellant, Lloyd Ewing acting as his agent in the purchase of the same, for $6,900. At that time $500 of the purchase price was paid in cash, and the contract of sale and the deed of conveyance were placed in escrow in the hands of G. A. Conzman, cashier of Vigo County National Bank, Terre Haute, Indiana, where the Rowleys then resided, to be held until March 1, 1897, when appellant then paid in cash $1,450, executed his note for $2,056, due March 1, 1898, being the note in controversy, with mortgage upon the land sold securing it, he also assuming a mortgage of $2,800 already put upon the land by the Rowleys. The cash payment was deposited in the bank to

Frorer v. Rowley.

the joint credit of C. A. and F. S. Rowley. Mr. Ewing, the agent of appellant, delivered the note of $2,056 and mortgage securing it, to C. A. Rowley, who, together with her husband and Ewing, left them with the bank, with instructions to hold the note and mortgage until March 1, 1898, then collect it and deposit the proceeds to the joint credit of C. A. and F. S. Rowley, but that one of them would call later and get the mortgage and send it for record, after which it was to be returned to the bank and held as before stated. F. S. Rowley called to get the mortgage to have it recorded, and the cashier not knowing or remembering the note was also in the package, thus inadvertently gave to him both note and mortgage, neither of which was ever returned to the bank. F. S. Rowley stated in his testimony that he retained possession of the note from the time he took it from the bank, until the mortgage was returned from the recording office, and when so returned, that himself and wife assigned both note and mortgage to Jerome Rowley to be credited upon the $2,500 note held by the latter, and that he, F. S. Rowley, mailed the papers to Jerome Rowley at Mt. Vernon, Ohio. This note and mortgage with indorsements as they appeared, were sent by Jerome Rowley through First National Bank of Mt. Vernon, Ohio, to First National Bank of Lincoln, Ill., and were at the latter bank paid by appellant, September 10, 1897, about six months before maturity, and the proceeds thereof sent to Jerome Rowley. Upon the trial the principal contest centered around the genuineness of the $2,500 note and the indorsement of the $2,056 note made by appellant, so far as those matters affected the appellee C. A. Rowley. The evidence upon these issues, as it appears in the record, is irreconcilably conflicting. It is impossible to harmonize the evidence upon opposing sides, and where there have been no intervening prejudicial rulings of the court, either as to the admission of evidence, or in the application of the law to the issues being tried (and there are no exceptions or complaints in that regard in the case presented), the rule is elementary and of long and well establishment, that where

the evidence of the side to which the verdict of the jury or
finding of the trial judge was given, standing alone in the
record, will support such verdict or finding, an appellate
court will not disturb such verdict or finding, but will accept
the same as decisive of the issue tried.   No doubt can be
entertained, after considering all of the evidence in this
record, as we have done, that the evidence of the appellee,
stan ling alone in the record, supports the finding of the
trial court, and as we have already said it is impossible to
harmonize the two sides of the evidence, and that being
true, no good purpose would be subserved in its discussion,
and we therefore feel compelled to and do accept the find-
ing of the trial court as decisive of the facts.

It is said also by the assignment of errors that the find-
ing and judgment of the court are contrary to the law of
the case.   This, however, is easily disposed of by a quota-
tion from an opinion of our Supreme Court.   It having
been established that the indorsement of C. A. Rowley upon
the note paid by appellant was not her indorsement, the
quotation from the law is aptly in point.   In the case of
Ryhiner v. Feickert, 92 Ill. 305, the note in question was
payable to " Chas. & Wm. Feickert," and Charles Feickert,
representing that he and William Feickert were partners,
sold the note and indorsed the same, before it was due, to
Ryhiner and others, without special authority from William
Feickert.   The payees of the note were not partners, and
William Feickert brought suit to recover for one-half of the
note thus negotiated, and the Supreme Court, in deciding
the case, said :

" The possession of the note by Charles Feickert, under
the circumstances, is of no significance.   In all cases
where notes are payable to joint payees, instead of part-
ners, the actual manual possession of the notes must be
in some one of the payees.   It is impossible that it can be
in all at the same time.   The faces of these notes disclose
the interest of the holder—that he is a joint payee, and that,
therefore, he holds for himself and for all other payees—
and rebut any presumption that might arise otherwise from
the mere possession of the notes.   Where notes are payable
to ' bearer,' or to ' order,' possession is *prima facie* evidence

of legal ownership. 2 Parsons on Notes and Bills, p. 42. And possession of a note not indorsed by one other than the payee, affords *prima facie* evidence that he is the equitable owner. But possession by one shown on the face of the note to be but a joint payee, could be regarded only as *prima facie* evidence of the title there disclosed. Illustrations of this may be found in the rule applicable to the possession of property by co-tenants. Freeman on co-tenancy, Sec. 167; Brown v. Graham, 24 Ill. 628.

The principle upon which it is held that the indorsement of one partner binds all the members of the firm, is that of agency—that each partner, within the scope of the partnership business, is the agent of all others; but this has no application to mere joint payees, and hence one can not bind the other by his indorsement. Story on Agency, Sec. 39. Neither party being the agent, in legal contemplation, of the other, he can no more bind the other by a sale of the note, without indorsement, than he can by a sale of the note with an indorsement. He has no power whatever to dispose of the interest of his co-payee, either legal or equitable, in the note, without the consent of his co-payee.

Nor do we conceive the fact that Charles Feickert was authorized to collect the notes when due as of any controlling significance. This only authorized him to collect when due, not to sell or compound the notes. Thompson v. Elliott, 73 Ill. 221; Padfield v. Green, 85 Id. 529."

Previous to the trial appellant had taken the deposition of several witnesses residing at or near Mt. Vernon, Ohio, who testified that they had met Mrs. Rowley there, and in conversations with her, or overheard, she had made various statements and admissions, which, if true, were inconsistent with her statements upon the trial that she had not signed the $2,500 note, and assigned the Frorer note to Jerome Rowley. Upon the trial appellee introduced several witnesses, who testified to the general bad reputation for truth of several of the Ohio witnesses who had testified by deposition for appellant. One of the reasons assigned for the granting of a new trial is, that appellant was surprised by such evident of bad reputation, and that subsequent to the trial he has discovered that, if a new trial should be granted, he can sustain the reputation of such witnesses by the testimony of several witnesses residing in Ohio, whose affidavits

were presented in support of such motion. It is now insisted the court erred in overruling the motion for a new trial, in consequence of such surprise and of such newly-discovered evidence.

It is within the observation of all who have had experience in the trials of closely contested issues of fact, that often many things occur which are regular and ordinary in the course of procedure, that operate to surprise the opposite party; but we are inclined to the opinion that whenever evidence is introduced, proper within the issues formed at the time the trial commenced, it can not be said that the opposite party is in a position, within any proper rule of practice, to claim surprise. A contrary rule would tend to render all trials uncertain and precarious. It is as important that an end be put to litigation as it is that justice be done in every case; and if by reason of the inattention of parties, or the inability of the human mind to anticipate every phase of a case that may present itself, legitimately, in the progress of the trial, or other unforeseen adventure, a new trial should be granted, it would be found at last that little stability could be attributed to the findings of juries or courts in any case. Every case, however, in this regard, must necessarily be determined by its own circumstances, and it is difficult to lay down a general rule to govern them all; suffice it to say, we are of the opinion that where the testimony of the witnesses, as in this case, is sharply conflicting and radically disputant, and the quality of the controversy was known to exist previous to the commencement of the trial, neither party ought to be permitted to say he was so far surprised because the credibility of some of the witnesses was attacked, that such incident is legal ground for a new trial. The credibility of material and contradictory witnesses is always an important and essential question, to be determined in every case; and while there may be, and are, various methods of testing such credibility of witnesses, no surprise should be predicated, when any usual and legal methods are resorted to, and on this view of the case we are of the opinion, that which is offered as

newly-discovered evidence in support of the motion for a new trial is cumulative merely, and far from being conclusive in its nature, and for the introduction of it a new trial should not be granted, under the well established rule that such evidence must not be cumulative merely, and must be of a controlling and conclusive character. Such is not the nature of the offered evidence, and the court committed no error in overruling the motion for a new trial upon such ground.

Finding no error, the judgment of the Circuit Court will be affirmed.