INTERNATIONAL HARVESTER COMPANY OF AMERICA, a Corporation, Respondent, v. PETER W. THOMAS and Erma Z. Thomas and Ruby H. Tallmadge, Appellants.

(176 N. W. 523.)

**Sales — warranty — failure of consideration — recovery of payments made.**

1. The plaintiff sold to defendants the Thomases, a certain gas engine accompanied by a written warranty, and took the defendants' notes and mortgages for the same before the delivery of the engine. Defendants made certain

payments thereon and were to much expense in buying repairs for the engine. According to the preponderance and weight of the testimony, the engine was wholly worthless; *held* that the notes were without consideration or if there were any consideration it had failed; that the mortgages, both chattel and real, securing the notes, were of no force nor effect and were or had become wholly invalid and unenforceable; that the defendants are not liable on the notes nor mortgages; that the defendants are entitled to recover any payments made and the amount expended by them for repairs thereon.

**Sales — effect of giving renewal note — availability of defenses against payment of new note.**

2. Where a renewal note is given instead of another which represented part of the indebtedness of a certain transaction, whatever defense might have been available as against original note is equally available as against the renewal note so long as the transaction remains one between the original parties.

**Sales — effect of giving renewal note — effect of waiver in renewal note — agreement of waiver in note held void.**

3. Where one had given a renewal note for another note which represented part of the purchase price of certain machinery, and in addition to the ordinary terms of a promissory note there was inserted in the renewal note a waiver of the maker's remedies if any against the payee, and said note is signed without the defendants expressing any intention to waive their right to such remedies or without their attention being particularly called to the waiver in the note, even though they could read and write, it is *held* that such waiver in such circumstances is of no force nor effect and is wholly invalid and constitutes constructive fraud, it being a contract in itself separate and distinct from the promissory note and there being no testimony showing that defendants intended to sign anything except a promissory note.

**Sales — obtaining of waivers by agents or sellers — waivers obtained by misrepresentation constitute constructive fraud.**

4. Plaintiff by its experts procured other waivers of defendants' remedies against the plaintiff upon various pretexts, such as procuring defendants to sign a waiver while representing it simply to be a paper to show delivery of the engine, etc. *Held* that waivers procured in this manner were procured by misrepresentation and constituted constructive fraud; that by reason thereof they were of no force, effect, nor validity; that the signing of the same by

NOTE.—Authorities discussing the question of failure of consideration as a defense to action on a purchase price note are collated in notes in 39 L.R.A.(N.S.) 938, and L.R.A.1918A, 1055, where it will be seen by an examination of the cases, that a want of consideration for a note arising where the note at its inception was given for the payment of property the title to which has entirely failed owing to defects therein, may be relied upon as a defense.

the defendants in the circumstances in which they were signed in no manner defeats their rights or remedies against the plaintiff.

Opinion filed June 30, 1919. Rehearing denied September 8, 1919.

Appeal from District Court of Hettinger County, *W. C. Crawford, J.* Reversed.

*Jacobsen & Murray,* for appellants.

*Miller & Zuger & Tillotson,* for respondent.

A buyer who keeps personal property, continues to use it until the trial of the collector's action for the price, is estopped to claim a rescission of the contract as a defense. Linderman Mach. Co. v. Shaw-Walker Co. (Mich.) 153 N. W. 34; Wetter Bros. v. Otto (Iowa) 162 N. W. 12; John D. Gruber Co. v. Smith (Mich.) 162 N. W. 124.

Our court has settled the law on the reciprocal duties of a warrantor and warrantee in the sale of machinery. See Fahy v. Easterley Mach. Co. 3 N. D. 220, 55 N. W. 580; Reeves & Co. v. Corrigan, 3 N. D. 415, 57 N. W. 80.

GRACE, J. Appeal from the judgment of the district court of Hettinger county, W. C. Crawford, Judge.

This is an action brought to recover upon two certain promissory notes, one for $1,100 and one for $1,175, each bearing interest at the rate of 8 per cent, and to foreclose certain chattel and real estate mortgages given to secure such notes. The notes and mortgages are signed by the Thomases. The defendant Ruby H. Tallmadge has no interest in this case on appeal. The complaint is in the usual form. The separate answer of the Thomases admits the execution of the notes and mortgages, and that plaintiff is the owner and holder of them. The defendants further plead that the notes and mortgages were wholly without consideration, or that if there ever was any consideration the same has wholly failed. The defendants plead a breach of warranty. They aver that the engine delivered to the defendant by the plaintiff was not the engine bargained for. They plead a counterclaim for the sum of $3,500 based upon the loss of crop for four different years.

The material facts, so far as ascertained from this record, which is in an exceedingly poor condition on account of the loss of the exhibit

in the case, which became lost before the case reached this court, are substantially as follows:

The Thomases purchased from plaintiff certain machinery consisting of tractor engine and certain attachments thereto. Exhibit "D" appears to be an order for such machinery. A copy of the same is as follows:

### Order for Gas and Gasolene Engine.

To International Harvester Company, Town Bismarck, N. D.

The undersigned of R. R. No. N.W.$\frac{1}{4}$, Sec. 22–133–97, P. O. county of Hettinger, state of North Dakota, hereby orders, subject to your approval and to all conditions of agreement and warranty printed on back of this order and made a part hereof, to be shipped on or about the (at once) to Tallmadge & Myers at New England engine one 30–60 h. p. International gas or gasolene engine, regular size of pulley, complete, including necessary fixtures, at price of three thousand two hundred seventy-five dollars, to be paid in cash in three years and balance of purchase price to be paid in 7 horses. Attachments. One each of the following, at the following prices: One P. & O. engine gang plow with both bottoms. One 15 bbl. A. & T. tank. One set 12″ extensions. One 1 h. p. starter engine. One steering device. In consideration whereof the undersigned will receive same on arrival, will pay freight and charges thereon from Chicago, Ill., and upon delivery or tender thereof will pay to your order, and execute approved notes payable to your order as follows: $1,000 due November 1, 1913; $1,100 due November 1, 1914; $1,175, due November 1, 1915. Said notes to draw interest at the rate of 8 per cent per annum from date until maturity, and 10 per cent per annum from maturity until paid. It is expressly agreed that this order shall not be countermanded, and that the title to said property shall remain vested in you and your assigns, until the entire purchase price has been paid in money. It is expressly agreed that the property herein ordered shall be and remain personal property in whatsoever manner it may be annexed to realty. The undersigned hereby acknowledge having received a true copy of this order, agreement, and warranty as indorsed on the back thereof.

Security: W.$\frac{1}{2}$ of N.W.$\frac{1}{4}$ and S.E.$\frac{1}{4}$ and N.W.$\frac{1}{4}$ and S.W.$\frac{1}{4}$ of N.E.$\frac{1}{4}$

of Sec. 22, Twp. 133, R. 97, Hettinger county; and N.E.¼ of Sec. 21, Twp. 133, Rge. 97, Hettinger county.

Order Dated the 26th day of April, 1913. Taken by W. E. Behrons. Signatures: Peter W. Thomas and Erma Z. Thomas.

The back of agreement is as follows:

Warranty and Agreement: International Harvester Company of America (Incorporated) warrants the within described engine to do good work, to be well made, of good materials, and durable if used with proper care. If upon one day's trial, with proper care, the engine fails to work well, the purchaser shall immediately give written notice to International Harvester Company of America, at Chicago, Illinois, and to the dealer from whom it was received, stating wherein the engine fails, shall allow a reasonable time for a competent man to be sent to put it in good order, and render necessary and friendly assistance to operate it. If the engine cannot then be made to work well, the purchaser shall immediately return it to the said dealer, and the price paid shall be refunded, which shall constitute a settlement in full of the transaction. Use of the engine after three days, or failure to give written notice to said company and said dealer, or failure to return the engine as above specified, shall operate as an acceptance of it and a fulfilment of this warranty. No agent has power to change the contract of warranty in any respect. This express warranty excludes all implied warranties, and said company and said dealer shall in no event be liable for breach of warranty in an amount exceeding the purchase price of the engine. If within ninety days' time any part proves defective, a new part will be furnished on receipt of part showing defect.

The engine was received by the Thomases, for which they gave their three notes, two of which are above described and another of $1,000 was paid in November, 1913. Thomas gave a renewal note of the $1,100 note which was due in November, 1914. This note became lost. Upon said note is the following: "This is renewal and extension of time of payment of my note number 72 the year 1913, given (with one other note) in full payment of the purchase price of engine—eight bottoms, plow, oil tank machine, and in consideration of such renewal and extension I hereby expressly waive all claims arising out of the purchase of said property and all defenses, statutory or otherwise, to the payment

hereof. The indorsers, sureties and guarantors severally waived presentment for payment, protest, and notice of nonpayment and diligence."

It is claimed by the defendants that at the time they made the renewal note that the plaintiff agreed to make good its warranty, and that such renewal note and mortgages to secure the same were made only upon these conditions. The notes in question were executed and delivered to the plaintiff prior to the delivery of the engine in question. The engine was delivered to the defendants. It was brought out by Mr. Vedders, who was acting for the company. He operated it about half a day, had more or less trouble with it. He plowed about three or four hours the first day. Within two days after that the plaintiff called for an expert through Tallmadge & Meyers of New England, then agents of the plaintiff. The next morning Mr. Bankston, an expert of the company, went out and worked on the engine. The defendants claim there is no consideration for the note, by reason of breach of the warranty hereinbefore set forth. That the engine was absolutely worthless for the use and purpose for which it was intended seems clear from the testimony.

Mr. Meyers at the time of the sale of the engine was agent of the plaintiff. He was a witness in this case and gave the following testimony:

Q. Now, after the engine was delivered, did you observe how it worked, go out there or anything?

A. Yes, sir.

Q. How did it work?

A. Very spasmodically.

Q. What do you mean by that?

A. Sometimes it did and sometimes it didn't.

Q. Do you know what was the matter with it?

A. It had too many ailments for me to describe it.

Q. Name some of the ailments.

A. Continual breaking of the gears; continual wearing out of the gears; continual trouble with carburetion and ignition and lubrication. As a matter of fact I do not believe there was a part of the engine that didn't give us trouble.

Q. Well, from your experience in handling engines, please state whether or not that engine was good workmanship.

A. I naturally made up my mind as to that.

Q. What did you say?

A. I think it was ready for the junk heap the day it was made.

Q. Please state about the material that was in it.

A. The material, as I observed it, such as the gears and parts which I helped replace, were very defective; the cast seemed to be very inferior, full of blow holes and sand holes, and if I was any judge of material I would say the material in it was very poor.

Q. Did you notice where the breaks would be in the sand holes or out of the sand holes?

A. Yes, I noticed from the breaks right in the sand holes.

Q. Shortly after the engine had been delivered to Thomas, did he indicate to you that it wasn't satisfactory, that he wanted an expert?

A. Yes.

Q. How many days after he got the engine was that?

A. I can't state the exact number of days, but I am certain it was not over two days.

Q. Did you indicate this to the company?

A. Yes, sir.

Q. And indicated to them what Thomas indicated to you was the matter with the engine?

A. Yes, sir.

Q. What was that indication as to what was the matter with the the engine?

A. That he couldn't make it work and that he wanted them to send an expert.

Q. In response to that request by you, did the company send an expert?

A. Yes, sir.

Q. How long afterwards?

A. I think it was the following day.

Q. What was his name?

'A. Bankston.

Mr. Tallmadge, who was associated in business with Mr. Meyers, they at the time of the sale being the agents of the plaintiff, testified

that the amount of repairs for the engine gotten by Thomas either gratis or for which he paid cost in the neighborhood of $1,500. Thomas's testimony shows conclusively that the engine was practically worthless. The record as we read it is conclusive that the engine was worthless for the use for which it was intended. The record also conclusively shows that the plaintiff received notice within the three-day period of the failure of the engine to work, and that it sent its experts out from time to time in an effort to remedy the defects in the engine and to cause it to do its work. In all the company sent out four different experts at different times. They have failed utterly to make the engine comply with the warranty. So far as the engine is concerned, it afforded no consideration for the notes.

The plaintiff has produced no testimony to controvert the testimony of the worthlessness of the engine. It thus in effect admits that the engine was worthless. It relies, however, on defendants' alleged waivers of the defects in the engine and the damages sustained by him by reason thereof. One of the alleged waivers is contained in the renewal note. The other alleged waivers were procured from the defendants by some of the experts making certain representations to the defendants; for instance, one waiver was procured by representing to the defendants that the paper which they were signing was simply to show that the engine had been delivered. Another was procured under the representation that it was to show that the experts were out there at that time. This appears to have been the method pursued to procure the signing of the waivers. According to defendant's testimony, he did not know nor understand that any of such statements signed by him contained the waiver, nor that he was waiving the rights of defense against the collection of the notes, nor is there any testimony that he intended to do so, nor that he ever expressed any such intention at any time.

We will more particularly discuss the waiver in the renewal note. That waiver is above set out in full. This alleged waiver, from the length of it, if it were on the face of the renewal note, must have been in very fine print. It must be conceded that when the note was presented to defendants, it was the main subject before his mind. His mind must have been centered upon the giving of that note, upon the amount and terms thereof. He in all probability was considering the question of the note, and that only. There is nothing in the testimony to show

that at the time the note was signed his attention was called to the waiver thereon. There is no evidence to show that he expressed any intention to waive his rights or defense against the note or notes which they had given plaintiff. It must be kept in mind that the promissory note is one contract, that the waiver is a separate and entirely different contract; if the defendants were engaged in giving the note, and that matter alone was upon their minds, they would have no reason to examine anything, only the amount and terms of the note. That was the contract they were considering; that was the business they had gotten together to transact, and though defendants might be able to read and write, unless there is competent proof that the defendants knew, understood, and intended to waive their right of defense against the notes by reason of the worthlessness of the engine, such waiver is of no effect; it is a contract to which the defendants did not consent as a matter of law, nor is there any evidence to show that there was any mutual agreement between plaintiff and defendants that defendants should waive their cause of action, if any, nor any of their rights or claims against plaintiff. It was of no force nor effect, and does not operate to prevent the defendants from enforcing any remedies they may have against plaintiff. The same reasoning which we have applied to the waiver contained in the note applies with equal force to every waiver signed by the defendants. In the preparation of such waiver and the note, and the procuring of it to be signed by the defendants without calling their attention to the waiver, and without the defendants expressing any intention to waive their right of defense against collection of the notes or to enforce any remedies which they had against plaintiffs, coupled with the further proposition that the purpose of inserting the waiver in the note could be only to prevent defendants from exercising their remedies against plaintiff by enforcing their rights and remedies and defenses against him, would have a strong tendency to show that the whole proceedings of procuring such waiver amounted to constructive fraud. The procuring of other waivers by the experts under the representations and conditions under which they were procured amounted to constructive fraud. All of said waivers, including that in the note in this case, were of no force nor effect. The engine was worthless, the plaintiffs never did put it in shape to do its work though they had four different experts working on it in different years. It was clearly a hopeless failure as an engine;

this is conclusively shown by the undisputed testimony. The procuring of waivers under these circumstances and conditions cannot be regarded in any other light than that of constructive fraud. The writing or waiver signed upon the consideration of defendants' getting some new drive wheels and lugs was of no effect so far as defeating defendants' right to defend against the collection of any of the notes, nor did it in the circumstances of this case abridge any rights or remedies which he had against plaintiff. Drive wheels are not the only part of a gasolene engine. The drive wheels might be perfectly good and the rest of the engine worth nothing. The fact still remains that the engine as a whole is worthless for the purposes for which it was intended to be used. There is some testimony that, after the wheels were on, the engine would be worth from 30 to 50 per cent of the original purchase price. This testimony is, however, by Mr. Meyer, whose testimony we have quoted at length. There is no showing that after the wheels were put on that the engine would do any better work than before. There is no showing in the record that the engine in question has by the plaintiff been put in condition so that it would do the work for which it was intended. It did not do so at the time it was sold nor any time thereafter, except under great difficulty a few hundred acres were plowed with it. It was an expensive piece of machinery. It is useful if it will do its work properly. It is of practically no use nor value if it will not do its work.

The evidence clearly shows this engine to be practically a complete failure. Certainly under these circumstances it would be a travesty on justice to require the defendants to pay for an article so hopelessly unfitted to do the work for which it was constructed and intended, and they should not be required to do so simply because the plaintiff, through its experts or others, procured the defendants to sign waivers in the circumstances and conditions we have set forth. The giving of the renewal note amounted to nothing so far as cutting off any defense which defendants had to the collection of renewal note nor any other note given for the engine. Whatever rights, remedies, or defenses the defendants had against collection of the original note or notes, will be equally available against the renewal or other notes so long as the transaction remained one between the original parties. It is to be remembered also, that at the time defendants gave the renewal note, it was

upon the promise that the engine would be made to work, etc. If the engine did not work, the note still remained without consideration. Conroy v. Logue, 87 Minn. 289, 91 N. W. 1105.

The consideration relied upon for these notes involved in this lawsuit would seem to be limited to the value of the engine in question. It is true the order described some other property, such as plows and a starter engine, etc. There is no testimony so far as we are able to discover showing that the plows were delivered. If they were, they would be useless to defendants unless his engine was made to work and thus cause them to become of value and service to him. According to the order, the plows and engines were all part of one transaction, and in the circumstances of this case, if the engine was worthless to the defendant, the plows were equally so, for it is plain that defendant could not use them unless he could use the engine. In the circumstances of this case in all the conditions we have heretofore noticed, the plows or other attachments if they were delivered, constituted no consideration for the notes. It is also to be remembered there is considerable testimony showing that if the engine did not work properly that the defendants were to have their notes returned to them. Defendants notified the plaintiff within the three-day period, but did not return the machinery to it. He was not required to do so, for the plaintiff immediately upon the notice undertook to make the machinery work and comply with the warranty and continued to do so for the different years. The plaintiff by its conduct waived any right to have the machinery returned as a condition precedent to the assertion of rights by the defendants upon the breach of warranty. In all the circumstances of this case and keeping in mind all the testimony with regard to return of notes if the engine was not satisfactory and did not work, we think, as a matter of law, it is clear there was no actual delivery of the notes, and for this additional reason they are of no force nor effect and at law unenforceable.

From what has been said, we are clear there was no consideration for the notes, or, if there ever was any, it has wholly failed. This being true, the mortgages, both chattel and real, are of no force nor effect, and cannot be enforced. The plaintiff is not entitled to recover upon the notes, and is not entitled to foreclose the mortgages. The notes should be canceled and surrendered to the defendants, and the mortgage canceled and satisfied of record. It is also clear that the de-

43 N. D.—14.

fendant, under proper pleadings or in a proper action, is entitled to recover any payments he has made upon the engine or the machinery and all money which he has actually paid out for expense for repairs for the same.

The judgment of the trial court is reversed. The case is remanded to it for further proceedings not inconsistent with this opinion. The appellant is entitled to statutory costs on appeal.

BIRDZELL, J. I dissent.

CHRISTIANSON, Ch. J. (dissenting). I am unable to agree with the majority members either as to the law or the facts. It is stated, and reiterated, that the tractor was entirely worthless. Yet the defendant Thomas testified that in the years 1913, 1914, and 1915 he plowed hundreds of acres of land with the tractor. In 1914, in addition to plowing for himself, he also plowed 290 acres for one Davis, and gave an order upon Davis for $500, which was applied upon the purchase price of the tractor. And the majority members say that the defendant may recover from the plaintiff this money, which was earned with the machinery which plaintiff sold. Not only is it undisputed that the defendant was able to read and write, but his testimony shows that he entered into an agreement with the agent of the plaintiff that he would waive his claims against the company in consideration of the company furnishing a new set of drive wheels and lugs.

I quote from Thomas's testimony as contained in the record on this appeal:

Q. So that at that time in the fall of 1914, Mr. Thomas, when Mr. Harrison was out there, in substance then and there you agreed with him, after talking the matter over, that if you would get these new wheels and lugs you would pay the freight on them and that you would take the old wheels in and return them to the company and never make any more demand or claim on them, didn't you?

A. That was the agreement because we had come to the conclusion that the wheels was the cause of the gear breaking. We thought we had eliminated one of our main troubles by replacing the wheels.

Q. Well, you got the wheels didn't you?

A. No, sir.

Q. Why?

A. Because the first wheels that was shipped to me wasn't what we agreed upon.

Q. Was there some more shipped?

A. Yes, sir.

Q. Didn't you get them?

A. No, sir.

Q. Why?

A. Because, before I got enough money to get up there and pay the freight on them they had them shipped back. . . .

Q. Do you know when they were shipped back?

A. I don't know when they were shipped back. I know they were there quite a while.

Q. And during that time all you had to do was to pay the freight on them?

A. Yes, sir, something that I didn't have enough money.

Q. It was agreed upon, wasn't it, between you and the company through Mr. Harrison at that time that you were to pay the freight on them?

A. Yes, sir.

Q. And you were to go there and pay the freight and take the wheels and put them on and return the old ones, and the question of your contract was closed then and there forever, wasn't it?

A. If I had got the wheels, yes, probably would have.

The majority members say that the waiver contained in the renewal note must have been in fine print. The note is not in the record on this appeal. No member of this court has seen it or knows what its appearance was. The trial judge, however, saw it. He also saw the witnesses and parties who testified, and heard their stories. Tallmadge & Meyers, the agents who sold the machinery to Thomas, afterwards lost their agency. Their animus towards the plaintiff is apparent even from the printed page. The decision of the trial court should not be disturbed.