EUGENE SULLIVAN, Appellee, v. WILLIAM GAUL, Appellant.

**BILLS AND NOTES: Holdership in Due Course—Showing of Fraud Without Evidence in Avoidance—Effect.** Holdership in due course of a negotiable promissory note is wholly removed from an action when the defendant maker establishes that the note was obtained from him by fraud and the plaintiff makes no attempt whatever to avoid such showing.

**BILLS AND NOTES: Fraud—Waiver by Renewal of Note—Jury Question.** The maker of a promissory note who renews the note with express or implied knowledge that it was obtained from him by fraud thereby waives the fraud; but the court may not say, as a matter of law, that the maker is put upon inquiry and must be held to know of the fraud because of the fact that, when he executed the renewal note, he knew that certain *promises,* made when the original note was given, had not been kept by the original payee, it appearing that the time for the performance of such promises had not necessarily expired.

**BILLS AND NOTES: Actions—Plea of Ownership—Sufficiency.** In an action on a promissory note payable to two joint payees, an allegation by plaintiff that he is the owner and holder of the note is a sufficient allegation of ownership.

**PARTIES: Defect of Party Plaintiffs—Procedure.** Plaintiff's failure to join another party as a plaintiff may not be raised by motion to strike the petition.

**BILLS AND NOTES: Actions—Joint Payees—Proof of Ownership.** A promissory note payable to plaintiff and another, without the conjunction ''or,'' is payable to said parties jointly, and such note is not admissible for the purpose of establishing plaintiff's sole ownership.

*Appeal from Shelby District Court.*—O. D. WHEELER, Judge.

SEPTEMBER 26, 1924.

ACTION to recover upon certain promissory notes. From a judgment upon a directed verdict for plaintiff, defendant appeals.—*Reversed and remanded.*

*Grenville Paul North* and *Michael L. Donovan,* for appellant.

*John P. Hertert* and *Shelby Cullison,* for appellee.

VERMILION, J.—The plaintiff, the appellee, sued to recover upon two promissory notes given by the defendant, dated November 15, 1920, for $1,200 and $1,800 respectively. The appellee was cashier of the Panama Savings Bank, at Panama, Iowa. The notes are upon a printed form, containing the name of the bank printed as the payee. Above the printed name of the payee is written the name of appellee, so that, as the notes read, they are payable to the order of both appellee and the bank. There are no indorsements on the notes. The petition alleged that appellant signed, executed, and delivered the notes to appellee, and that appellee was the owner and holder thereof.

1. BILLS AND NOTES: holdership in due course: showing of fraud without evidence in avoidance: effect.

The answer contained a general denial and an admission of the execution of the notes, and pleaded fraud in the inception of the original note, given to the Skinner Packing Company upon a subscription to its capital stock, of which the notes sued on were renewals, and a want of consideration for the notes in suit. It was also alleged that appellee was not a holder in due course of the original note; and that appellant did not learn of the fraud practiced upon him until long after the execution of the renewal notes in question; and that, upon so learning, he immediately rescinded the contract for the purchase of the stock for which the original note was given.

In a reply, in addition to a general denial of the allegations of the answer, appellee alleged that the Panama Savings Bank purchased of the Skinner Packing Company the original note, of which those sued on were renewals, and that thereafter, and before its maturity, the same was transferred to and be-

came the property of the appellee; that, on the maturity of the
original note, appellant paid $125 on the principal and the in-
terest then due, and gave to appellee a new note for the balance,
$3,000; and that, on the maturity of the latter, he again paid
the interest, and gave to appellee the notes sued on; that, at each
such renewal, appellee surrendered to appellant the notes there-
tofore held by him, and appellant retained them. It was al-
leged that, by reason of these facts, appellant waived all of the
matters set up in the answer as a defense to the notes, and was
estopped to rely upon the allegations of the fraud in the sale of
stock of the Skinner Packing Company.

Upon the trial to a jury, the appellee offered the notes in
evidence, without preliminary proof of any character. They
were received over appellant's objection, and thereupon ap-
pellee rested. Appellant, without questioning the sufficiency of
the evidence at that point to entitle appellee to recover, offered
evidence tending to establish the affirmative allegations of his
answer. At the close of appellant's evidence, the trial court
directed a verdict for the appellee for the amount of the notes.
This ruling presents the important question in the case.

The evidence on behalf of appellant was to the effect that
he was induced to buy 100 shares of the capital stock of the
Skinner Packing Company at $125 per share, and to give the
original note in question therefor, with others, amounting, in
all, to $12,500, by representations by the salesman that the com-
pany was making 30 per cent on its capital at that time, and
had paid out over $100,000 in dividends; that the stock had
originally been sold at $100 per share, but they were making so
much money that it had been advanced to $125 per share, and
in two or three weeks would advance to $150; and that he would
sell the stock for appellant; that the note would not have to be
paid; that it was supposed to lie as collateral; that it might
be transferred to some local bank for collection, but it would
be arranged so that it could be renewed until the dividends
would take it up or pay for it. The appellant never received
any of the stock purchased or any dividends. He understood
that a dividend on the stock had been paid shortly before his
purchase of the stock, and that another dividend would not be

paid before the expiration of a year. He did not understand whether he was to receive stock certificates for the shares he bought before they were paid for or not, and had written to the company about it; but when he wrote, or what, if any, reply he received, is not shown. He never saw again the agent who sold him the stock and agreed to resell it for him, but wrote to the company, possibly six months after purchasing the stock, about the sale of it, and received a reply to the effect that "they would try to do the best they could and as soon as they had an opportunity that they would dispose of it." In April, 1921, he consulted attorneys, because he had not received the stock and dividends; and he testified that then for the first time he learned that the statements made to him by the stock salesman were not true. It was shown that on May 31, 1921, he caused a notice of his rescission of the contract of purchase of the stock to be sent by registered mail to the receiver of the company, and received through the mail a registry receipt therefor, and that he commenced an action to restrain the company from disposing of his notes. It was further shown that, at the time the representations were made and the original notes given, the Skinner Packing Company did not have a packing plant in operation, and had done nothing toward operating such a plant, and that it had received no funds save from the sale of its stock.

That these facts, which are not only uncontradicted, but, in the present situation, must be taken as established, would warrant a finding that the original note was procured by fraud, cannot be doubted.

Much of the argument is devoted to the question whether appellee was a holder in due course of the original note. The question is not in the case, as now presented. A holder in due course is one who takes an instrument, complete and regular upon its face, before it is overdue, in good faith and for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it. Section 3060-a52, Code Supplement, 1913. The title of one who negotiates an instrument is defective when he obtained it by fraud or other unlawful means, or when he negotiates it in breach of faith or under

circumstances such as to amount to fraud. Section 3060-a55, ibid.

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims, acquired the title as a holder in due course." Section 3060-a59, ibid.

Appellee did no more than introduce the note in evidence. With the evidence as to the manner in which the original note was obtained, sufficient, as we have said, to sustain a finding that it was procured by fraud or was negotiated in breach of faith, any presumption that the appellee was a holder of the original note in due course ceased to prevail; and, in the absence of any showing as to when or under what circumstances it was acquired, any question whether either the bank or appellee was a holder in due course is entirely out of the case.

This being true, it follows that the original note in the hands of appellee was subject to the same defenses as if it were nonnegotiable. Section 3060-a58, ibid. By Section 3044 of the Code, a nonnegotiable instrument in the hands of an assignee or transferee is subject to any defenses which the maker had against the payee before notice of the assignment.

There being nothing in the situation of the appellee that would have entitled him to recover on the original note as against the defenses of fraud in its inception, it is apparent that the action of the lower court in holding, as 2. BILLS AND NOTES: fraud: waiver by renewal of note: jury question. a matter of law, that the defense of fraud was not available to appellant in the action on the notes given in renewal of it, must be sustained, if at all, upon the theory that the giving of the renewal notes or some act or omission on the part of the appellant operated to deprive him of the right to rely upon such a defense.

It is well settled that the giving of a note to a transferee in renewal of a note procured by fraud, if done with a knowledge of the fraud or a knowledge of facts sufficient to put the maker upon inquiry, will be a waiver of the defense, and under proper circumstances will constitute an estoppel. It is essential, how-

ever, to such a waiver or estoppel that the maker, at the time the renewal note is given, have knowledge of the fraud or a knowledge of facts sufficient to put him upon inquiry which, if pursued with reasonable diligence, would have disclosed the fraudulent character of the transaction. *City Nat. Bank v. Mason,* 181 Iowa 824; *Commercial Sav. Bank v. Schaffer,* 190 Iowa 1088; *Farmers & Merchants Sav. Bank v. Jones,* 196 Iowa 1071; *Grimes Sav. Bank v. McHarg,* 197 Iowa 1393; *Auld v. Walker,* 107 Neb. 676 (186 N. W. 1008); *Seager v. Drayton,* 217 Mass. 571 (105 N. E. 461); *Wheelock v. Berkeley,* 138 Ill. 153 (27 N. E. 942); *International Harvester Co. v. Thomas,* 43 N. D. 199 (176 N. W. 523); *Aikey v. Gardner,* 243 Mass. 77 (136 N. E. 876); 8 Corpus Juris 218. Counsel rely upon the early case of *Moffitt v. Cressler,* 8 Iowa 122. It was there said that the giving of a note for a machine previously sold would be, *prima facie* at least, a waiver of fraud practiced at the time of the sale. It appeared that the defects in the machine and the falsity of the representations were known to the maker at the time he gave the note.

The action of the lower court was predicated upon the proposition that appellant, at the time he executed the notes in suit, knew of the fraud that had been practiced upon him in obtaining the original note, or had knowledge of facts sufficient to put him upon inquiry, and that, by executing the renewal notes with such knowledge, he waived any defense he had on account of such fraud. It is further urged in argument that appellant had a right, within a reasonable time after discovering the fraud, to elect to rescind the contract for the purchase of stock, or to stand by the contract and seek damages; and that the execution of the renewal notes was an election to affirm the contract; or that, in any event, his election to rescind was not made within a reasonable time, and he is therefore bound by the contract, has no defense to the notes given for the stock, and could only recover his damages. We are of the opinion that the distinction made by counsel between a waiver of the defense of fraud and an election to affirm the contract is unimportant, in the present situation. In either event, the result claimed, the loss of his right to insist upon his defense, depends,

not upon the mere giving of the renewal notes, but upon whether he acted with knowledge of the fraud, or with knowledge of such facts as would put him upon inquiry which, if pursued with reasonable diligence, would have disclosed the fraud.

The only representation of facts established by the evidence, as distinguished from promises or statements as to the future, was in reference to the earnings of the corporation and the payment of dividends. Without questioning the rule that a promise, if made with no intention of performance, and for the purpose of accomplishing a fraud, may be actionable (*City Nat. Bank v. Mason,* 192 Iowa 1048), yet, it is to be observed, there are certain manifest differences between a mere promise, however fraudulent the intent, and a false statement as to an existing fact. Particularly is this true with reference to the inference to be drawn from mere knowledge that a promise has not been fulfilled. It is a matter of universal experience that many promises honestly made may, by reason of unforeseen contingencies, be unperformed. The appellant knew, of course, that he had received no dividend on his stock, that he had not received any stock certificates, and that his stock had not been sold. While the promise of the salesman that these things would be done might, under certain circumstances, amount to actionable fraud, yet the mere fact that they were not done would not so show. Nor do we think that knowledge on the part of appellant, at the time the notes in suit were given, that such promises had not then been kept, could be said, as a matter of law, to affect him with knowledge that his notes had been procured by fraud, or even necessarily to put him upon inquiry. The first renewal note was executed at the end of six months from the date of his purchase, and the notes in suit a year from that date, and within only a short time after he had any reason to expect a dividend. He was not told when he would receive certificates for the stock he purchased, and did not know whether it would be before he paid the notes given for it or not. He had written the company about the sale of his stock; and, so far from learning that the salesman's promise to sell it for him was fraudulent, and made with no intention of performance, he was, on the contrary, informed that the company would do the

best it could to dispose of it for him. These were all promises still capable, in their nature, of performance; and the mere fact that they had not yet been fulfilled would not have warranted an instruction that they were fraudulent, or that appellant knew of their fraudulent character. It is urged that appellant knew the original note had been negotiated, in violation of the salesman's promise not to do so. While, it is true, the renewal note was payable to appellee, appellant testified that appellee told him that the original note was held by the bank for collection. He had been allowed to renew the note, as it had been promised he might, although the renewal notes, he seems to have understood, were payable to the bank. That these were all circumstances to be considered in determining whether, at the time the renewal notes were executed, appellant knew of the fraud, or had sufficient knowledge to put him upon inquiry, must, of course, be conceded; but we are by no means prepared to say that they were sufficient to justify the court in directing a verdict against appellant on the ground that he had such knowledge when he executed the notes in suit.

The representation of the stock salesman that the company was earning 30 per cent on its capital was shown to be false. It had no plant in operation, and had received no money, except from the sale of its stock. While it seems not to be questioned that it had paid one dividend,—possibly more,—this was not done out of earnings, for there were none, but out of capital, the proceeds of the sale of its stock. There is no evidence that appellant had any knowledge of the falsity of the statement as to the earnings of the company, or of the true situation with respect to the payment of dividends, until shortly before he took steps to rescind the contract, and after the notes in suit were given. Whether appellant was chargeable, at the time he gave the notes sued on, with knowledge of the fraud practiced upon him in the original transaction, and thereby waived, or was estopped to rely upon, such fraud as a defense, and whether he acted with reasonable promptness in rescinding the contract, were, under all the circumstances, we think, for the determination of the jury, under proper instructions.

Error is assigned on the rulings on a motion to strike the

copies of the notes from the petition, on the ground that it appeared that the Panama Savings Bank was one of the owners of

3. BILLS AND NOTES: actions: plea of ownership: sufficiency. the notes, and to strike the whole petition because of a defect of parties. The petition alleged that the appellee was the owner and holder of the notes. This was sufficient as an allegation of appellee's ownership, notwithstanding the fact that it appeared on the face of the notes that two payees were named. The appellee did not allege that he was a holder in due course, nor facts showing him to be such a holder; and that question was not involved.

4. PARTIES: defect of party plaintiffs: procedure. Moreover, the question of nonjoinder of the bank as a party plaintiff could not, in any event, be raised by motion. Code Section 3561; *McCormick v. Blossom*, 40 Iowa 256; *Anderson v. Acheson*, 132 Iowa 744, 759. There was no error in the ruling.

By a motion for a more specific statement, it was sought to have set out in the petition matters that were purely defensive. The motion was properly overruled.

Complaint is made of the action of the court in admitting in evidence the notes sued on, without proof of appellee's ownership. Counsel for appellee argue that, since there was a fail-

5. BILLS AND NOTES: actions: joint payees: proof of ownership. ure to challenge his right to recover, at the close of appellee's evidence, appellant is in no position to complain of the admission of the notes in evidence; that a failure to prove appellee's ownership of the notes did not make them inadmissible.

The question of the admissibility of the notes and the question whether, upon their introduction in evidence, without more, appellee made out a prima-facie case, are closely related. The execution of the notes was admitted in the answer. So far as their execution was concerned, the introduction of the notes established nothing more than was admitted in the pleadings. While their admission for that purpose was unnecessary, it would not be error. But, unless their possession by appellee and his production of them on the trial was prima-facie evidence of his ownership, they not only failed to establish the fact of ownership, but were inadmissible for that purpose. In *Rubey v. Culbertson*, 35 Iowa 264, it was held that a note was admissible

without proof of ownership, because, it was said, the plaintiff's possession of the note was prima-facie evidence of his ownership. That this was the purpose of their introduction here, and that it was so considered by the court, is apparent from the fact that no other evidence was offered by appellee, and the court, upon the introduction of the notes alone, held appellee entitled to recover. On the state of the record, we might hesitate to reverse because of the admission of the notes alone; yet, in view of the necessity for a retrial on account of other error, we deem it proper to say that appellee's possession of the notes was not even prima-facie evidence of his ownership, and that they were, therefore, inadmissible to establish the essential fact of ownership.

There is a marked conflict of authority upon the question whether the possession by a plaintiff, not the payee, of an unindorsed negotiable instrument payable to order, or his possession, when not the indorsee, of such an instrument especially indorsed, is prima-facie evidence of his ownership and his right to maintain the action. The divergent views are well expressed in the cases of *Capital Hill State Bank v. Rawlins Nat. Bank*, 24 Wyo. 423 (160 Pac. 1171, 11 A. L. R. 937), and *Johnston County Sav. Bank v. Scroggin Drug Co.*, 152 N. C. 142 (67 S. E. 253, 50 L. R. A. [N. S.] 581). The authorities are collated in extensive notes in the last named publications. That there is some apparent confusion in our own decisions will be found from an examination of the cases. *King v. Gottschalk*, 21 Iowa 512; *Rubey v. Culbertson*, supra; *Hesser v. Doran*, 41 Iowa 468; *Roy v. Duff*, 170 Iowa 319; *Young v. Hayes*, 183 Iowa 134; *American Exp. Co. v. Peoples Sav. Bank*, 192 Iowa 366. While these cases would indicate that there has been some departure from the earlier holdings, that possession of such an instrument was prima-facie evidence of ownership, the present case does not require a determination of the question. If it were conceded that possession by one not the payee, of an unindorsed note payable to order, would be prima-facie evidence of ownership, the doctrine could find no application here.

The notes in question were payable to the order of two payees, the appellee and the bank. That they were joint payees

cannot, we think, be doubted. It is obvious that the notes were payable to the order of the two jointly, or to the order of either one or the other of them in the alternative. In order to say that they were payable to the order of either of them, it is necessary to read into the notes the disjunctive ''or,'' between the names of the payees. While the use of the conjunction ''and'' would have conformed to common grammatical and legal usage, it was not necessary, in order to convey the thought of ownership in the two payees named. That fact appeared from the mere naming of two payees. Since the notes, as they read, are payable to the two payees, but not in the alternative, they must be payable to them jointly. The appellee, as one of two joint payees, was as much entitled to possession of the notes as was the other. His possession would be referable to his right as a payee, and in no manner inconsistent with the continued ownership of an interest in the notes by the other payee. Since he was entitled to the possession of the notes in his right as a payee, and to hold them for himself and the other payee, and to do so would not be in derogation of any right or title possessed by the latter, there is no room for a presumption of his sole ownership from his mere possession. In *Ryhiner v. Feickert,* 92 Ill. 305 (34 Am. Rep. 130), speaking of a similar situation, the court said:

''The faces of these notes disclose the interest of the holder —that he is a joint payee, and that therefore he holds for himself and for all the other payees—and rebut any presumption that might arise otherwise from the mere possession of the notes. * * * Possession of a note, not indorsed, by one other than the payee, affords prima-facie evidence that he is the equitable owner. But possession by one shown on the face of the note' to be but a joint payee could be regarded only as prima-facie evidence of the title there disclosed.''

See, also, *Frorer v. Rowley,* 84 Ill. App. 446.

It is unnecessary to consider other errors assigned, as the questions presented may not arise upon a retrial.

For the error in directing a verdict for appellee, the case is—*Reversed and remanded.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.