NATIONAL BANK OF DECORAH, Appellee, v. W. A. ROBISON, Appellant.

**SALES:** Warranty and Fraud—Fatally Delayed Rescission.  Right to
1  rescind a purchase of live stock is waived, as a matter of law, by
a delay of over a year after discovery of the fraud and breach of
warranty, by making no complaint to the seller, by treating the
contract as subsisting, and by making payment in cash and in re-
newal of notes.

**BILLS AND NOTES:** Fraud—Waiver by Executing Renewal Note.
2  Fraud in the inception of a note is wholly waived by the execution
of a renewal note with knowledge of the fraud; and it matters not
whether the holder of the renewal note is or is not a holder in due
course of the original note.

**SALES:** Violation of Statute—Infected Live Stock—Liability.  The
3  liability of the seller of live stock for selling with knowledge of
the contagiously infected condition of the stock (Sec. 2661, Code
of 1924) is independent of any liability arising out of a breach of
warranty or fraud in such sale.

**Headnote 1:** 35 Cyc. p. 152.  **Headnote 2:** 8 C. J. p. 445.  **Headnote 3:**
35 Cyc. p. 441.

*Appeal from Winneshiek District Court.*—W. J. SPRINGER,
Judge.

APRIL 7, 1925.

ACTION upon a promissory note.  Verdict and judgment
for plaintiff by direction of the court.  Defendant appeals.—
*Affirmed.*

*Cook & Cook*, for appellant.

*E. R. Acres, W. S. Hart*, and *Willett & Nelson*, for appellee.

STEVENS, J.—This is an action upon a promissory note for
$2,000, given by appellant to the appellee bank on March 16,
1921, in renewal of a balance due on a note of $3,500, executed

1. SALES: warranty and fraud: fatally delayed rescission.

September 16, 1920, by appellant to one John Logsdon, a fine-stock breeder, of whom he purchased, on or about that date, a small herd of pure-bred shorthorn cattle. The note in suit bears the indorsement of Logsdon Bros., by John Logsdon. The herd consisted of three bulls and a mixed lot of twelve heifers and cows. Appellant is also a breeder of pure-bred stock, and purchased the herd for breeding purposes.

The answer is in four counts, and pleads a warranty of the cattle in certain particulars, the breach thereof, and a partial rescission or attempted rescission of the contract. Appellant also in argument treats the answer as setting up fraud in the inception of the note. Appellant alleged that the cattle were warranted by the seller to be sound, free from disease, without defects, and suitable for breeding purposes, and that the females were all in calf. He further alleged that certain of the cows were afflicted with a disease known as contagious abortion; that two of the heifers were not in calf; that one of the bulls had a cancer which, although removed, unfitted him for service; and that one cow had only three teats and a bad quarter. The cattle were shipped direct to Independence, where they arrived about the 16th day of September, and were taken to the fairground for exhibition at a fair then being held. The cattle came in contact with other cattle at the fair.

The jury was instructed to return a verdict for plaintiff at the close of the defendant's evidence, from which it appears that two of the heifers were not in calf; that one, although repeatedly bred, did not get in calf; that four of the cows or heifers aborted, —two in December, 1920, one in January and one in October, 1921; and that one of the bulls did have cancer, and that same was removed by an operation. Appellant learned, during the fair or a few days thereafter, that two of the heifers were not in calf; that the bull was diseased; and that one of the cows had only three teats and a bad quarter.

It is alleged in the answer and established by the evidence that, on or about November 4, 1921, appellant returned to the seller, by prepaid freight, the several head of cattle as to which it is claimed the warranties were breached. The seller refused to accept them, and they were disposed of by the carrier for

the purpose of paying charges. It was also alleged by appellant that the several head of cattle were purchased separately, for a specific price. The total price paid for all of the stock was $5,500. $2,000 was paid in cash, and the note for $3,500 was given to the seller for the balance. This note was turned over to the appellee bank sometime before its maturity. Whether value was paid therefor without notice of the infirmities therein does not appear from the evidence, nor did appellee plead that it was such holder. Possibly the allegations of the answer made the latter unnecessary. Before the bank received the note, appellant paid Logsdon $1,000. After the bank acquired the note, he made a further payment to Logsdon for the bank, of $500, thereby reducing the note to $2,000. On or about March 16th, the note in suit was executed by appellant, forwarded to Logsdon, indorsed by Logsdon Bros., as already stated, and delivered to the bank. The exact date on which this note was delivered to the bank is not proved. Appellee, by way of reply, set up the above facts, together with other matters presently to be stated, as a waiver of the right of appellant to plead fraud or breach of warranties as defenses to the note. It will be observed that appellant knew, within a week, at most, after he purchased the stock, that two of the heifers were not in calf; that one of the cows had but three teats; and that the bull was afflicted with cancer. Two of the females aborted in December, 1920, one in January, 1921, and one the following October. Thus he possessed knowledge of all of said matters prior to the execution of the renewal note, except the abortion that occurred in October. Considerable correspondence passed between appellant and Logsdon. Frequent reference is made in the letters of appellant to the fact that two of the heifers were not in calf; that the bull was diseased; and that some of the cows had aborted. On February 11, 1921, which was prior to the execution of the renewal note, referring to the condition of the stock, he said:

"I am sorry I am so tied up and cannot see my way clear to get your money on time, but will do my best to sell something. But really do not think you had better put much dependence in me. You can see the muss I am in with the heifers and we do not breed any of them any more to Cyrus of Eden

as Dr. Kippen said *it looked like abortion*. We have not lost any out of our old herd.''

The correspondence continued practically up to the time of the attempted rescission of the sale. In a letter dated March 4, 1921, Logsdon informed appellant that he had been compelled to turn the note over to the bank. The foregoing will suffice as a statement of the issues and facts.

Treating appellant's answer as pleading both a breach of warranties and fraud in the inception of the original note, we shall dispose of the questions presented for review upon both theories. Section 9998, Code of 1924, provides the following remedies for breach of warranty:

''d. Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.''

It is, of course, always open to the purchaser of property to retain the same and sue the seller for damages for breach of warranty or fraud in the sale thereof, or he may, within a reasonable time, rescind the sale by returning or offering to return the same, and placing the seller *in statu quo*, and recover the price paid. With particular reference to rescission on the ground of a breach of warranty, attention is called to the following decisions of this court: *McCormick Harv. Mach. Co. v. Russell*, 86 Iowa 556; *Robinson & Co. v. Berkey & Martin*, 111 Iowa 550; *Mattauch v. Riddell Auto. Co.*, 138 Iowa 22; *Fulton Bank v. Mathers*, 161 Iowa 634; *Merch. Nat. Bank v. Grigsby*, 170 Iowa 675; *Todd Shoe Co. v. Pierce Shoe Co.*, 179 Iowa 1383. Under the holding of the above cases, rescission must be effected within a reasonable time. Ordinarily, what constitutes a reasonable time is a question of fact; but this is not necessarily so. Under some circumstances, it is a question for the court. *Mattauch v. Riddell Auto. Co.*, supra. The evidence tended to show that the seller's herd was afflicted with the disease known as contagious abortion; but it does not appear that he knew that the particular heifers sold to appellant were afflicted with this disease.

It being assumed, without being so held, that appellant had a right, under the facts of this case, upon discovering the breach

of warranties or the fraud charged, to a partial rescission of the sale, had he, by the course of dealing with the parties and the lapse of time, waived such right before returning the stock to the seller? It seems to us that the record presented no ground of fact on this issue, for submission to the jury. Rescission was not attempted for more than a year after appellant had knowledge of the defects in a part of the stock, and he knew for many months of the other defects complained of. Notwithstanding the possession of such knowledge, he made no complaint to the seller, maintained an amicable correspondence with him, inconvenienced himself to make payments on the note to accommodate him, retained possession of the stock, and executed the renewal note to the bank, without once having signified that he desired to rescind the sale or to claim damages on account of the alleged fraud and breach of warranties pleaded. Rescission was not made within a reasonable time, and appellant must have been deemed to have affirmed the sale. The authorities previously cited are sufficient on this point.

On the other theory of appellant's case,—that is, that the bank was not a bona-fide holder of the note for value, and therefore that it was subject to the defenses pleaded,—it is apparent that the plea of waiver is equally conclusive against him. We have repeatedly held that the execution of a renewal note to a bona-fide holder for value, with knowledge of the original fraud, waives the right to plead same as a defense to an action upon the renewal note. *Anthon State Bank v. Bernard,* 198 Iowa 1345; *Sullivan v. Gaul,* 198 Iowa 630; *Grimes Sav. Bank v. McHarg,* 197 Iowa 1393; *State Sav. Bank v. Deal,* 203 N. W. 293. As held in the *Deal* case, it is immaterial whether the bank held the original note as a bona-fide purchaser for value before maturity and without notice of defects in the title of the seller, or whether it was a transferee or assignee thereof, with full knowledge of the facts. The execution of the renewal note operated, in either case, as a waiver of the fraud charged. It is urged by appellant in this connection that he did not know definitely that the heifers were afflicted with the disease known as contagious abortion, until about the time that he returned the stock to the seller. Perhaps this claim is strengthened by the information obtained

2. BILLS AND
NOTES: fraud:
waiver by exe-
cuting renewal
note.

after December, 1920; but, as shown by his own statements quoted above, he had knowledge of such facts as must have put him upon inquiry.

If it can be said that some of the herd had a contagious disease at the time of the sale, and that this fact was known to the seller, the sale was made in violation of Section 7, Chapter 287,

3. SALES: violation of statute: infected live stock: liability.

Acts of the Thirty-eighth General Assembly, and the seller may be liable to appellant for the purchase price; but this liability, if any, is wholly independent of the fraud or warranties charged, and could only be taken advantage of by way of an action against the seller therefor, or by way of counterclaim.

It is our conclusion that the motion of appellee for a directed verdict was properly sustained.—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.