CARMEL E. A. LARSON et al., Appellants, v. STANTON STATE BANK et al., Appellees.

**BILLS AND NOTES: Fraud—Renewal with Knowledge—Jury Question.**
1   Evidence reviewed, on the issue whether a maker of fraudulently procured promissory notes renewed them at a time when he had knowledge of the fraud, or in reason ought to have had such knowledge, and held to present a jury question.

**WITNESSES: Impeachment—Inconsistent Statements.** Pleadings containing inconsistent or contradictory statements of relevant facts
2   are available for impeaching purposes. (See Book of Anno., Vol. 1, Sec. 11255, Anno. 23 *et seq.*)

**BILLS AND NOTES: Fraud—Partial Knowledge—Effect.** The fact
3   that a fraudulently induced maker of a promissory note knew, when he renewed the note, that *one* of the very material inducing representa-

tions was false does not necessarily constitute a waiver of all *other* actionable fraud of which he was then ignorant; nor does such knowledge *ipso facto* charge him with knowledge of such *other* fraud.

**BILLS AND NOTES:** Execution—Rescission—Status Quo. An offer by the maker of a promissory note, on rescission thereof, to return everything received by virtue of the note, is a sufficient offer to put the holder *in statu quo*. (See Book of Anno., Vol. 1, Sec. 9449.)

**EVIDENCE:** Similar Facts and Transactions—Fraud. A party alleged to have been defrauded may show, on the issue of fraudulent representations inducing the execution of a promissory note, that the defendant made like representations to other parties at about the time in question.

Headnote 1: 8 C. J. p. 1066 (Anno.) Headnote 2: 40 Cyc. p. 2745 (Anno.) Headnote 3: 8 C. J. p. 445. Headnote 4: 13 C. J. p. 621 (Anno.) Headnote 5: 22 C. J. p. 747.

Headnote 3: 3 R. C. L. 1106. Headnote 5: 10 R. C. L. 938.

*Appeal from Montgomery District Court.*—J. S. DEWELL, Judge.

### MAY 7, 1926.

### REHEARING DENIED OCTOBER 4, 1926.

Action in replevin to recover certain promissory notes alleged by plaintiff to have been given in renewal of certain notes procured from him by fraud. There was a directed verdict for defendants at the close of plaintiff's testimony, and from a judgment thereon against him and the sureties on the replevin bond for the amount due on the notes, the plaintiff and such sureties appeal.—*Reversed and remanded.*

*Donovan & Hines* and *Paul V. Wilson*, for appellants.

*Clifford Powell* and *Hysham & Billings*, for appellees.

VERMILION, J.—The four notes in controversy were executed in February and March, 1923, and were renewals of notes originally given by plaintiff, Carmel E. A. Larson,—who will be

1. BILLS AND
NOTES: fraud:
renewal with
knowledge:
jury question.

referred to as the appellant,—to the Skinner Packing Company, upon subscriptions for stock in that corporation. The original notes were purchased by the appellee bank, and were many times renewed by the appellant. Three of the notes here involved were in the hands of the appellee bank, and the fourth in the hands of the appellee Danbom, and they claimed to be holders in due course.

The appellant's claim to recover the notes was grounded upon alleged fraud of the packing company and its agents in the procurement of the original notes, participated in by the individual appellees, officers of the bank.

There was no denial of the representations alleged to have been the inducement for the giving of the original notes, but appellees alleged that any such representations were mere expressions of opinion; that appellant had waived any right to rely thereon, and was estopped by renewing the notes with full knowledge of such facts as put him upon inquiry; that appellant had not rescinded the contract for the purchase of the stock, or returned or offered to return what he had received, and had made no demand for the notes before bringing suit.

I. The chief complaint of appellant is of the action of the court in directing a verdict for the appellees at the close of appellant's evidence.

There was testimony tending to show that appellant's purchases of stock in the Skinner Packing Company, for which the original notes were given, were induced by representations of the stock salesman that the appellee bank, with which the appellant did business, was the financial agent of the packing company; that appellee Danbom, the cashier of the bank, was a director in the packing company; that the stock was guaranteed to pay 8 per cent; that the company was making sufficient profits to pay 8 per cent, and had assets of the value of $8,000,000; that the stock salesman was working on a salary, and the expenses of running the company or of organization would not exceed 5 per cent; and that the stock was going to be advanced in price. There was also testimony that these representations were made in the presence of the appellee Danbom, cashier of the bank, who asserted that he was a director in the packing company, and that the bank was its financial agent, and that the company guaran-

teed 8 per cent. There was further testimony that the president of the packing company stated to appellant, in the presence of the appellee Swanson, the president of the bank, that what the salesman had said was true; that the company guaranteed to pay 8 per cent dividends; that it had assets of $8,000,000; that the stock salesman was working on a salary, and the promotion expense would not exceed 5 per cent; that Danbom was a director in the company; and that its stock was going up in a few days.

Appellant's first purchase of stock was made at $100 per share. Later, he purchased additional stock at $125 per share, at which time, he testified, substantially the same representations were made in the presence of Danbom, and the latter stated that he had attended a directors' meeting at which it had been voted to increase the price of the stock to $150 per share. There was testimony tending to show the falsity of many of these representations: notably that Danbom was not a director of the packing company; that the bank was not its financial agent; that it had no sufficient profits from its operations out of which to pay 8 per cent dividends; that it paid a commission of 12½ per cent to the stock salesman who sold stock to appellant.

Appellant purchased his stock in 1918 and 1919. In 1921 he became dissatisfied, because, as he testified, of the failure of the company to pay dividends, and demanded of the president of the company the return of his money and notes. There was testimony that it was then explained to him by the president and Danbom that the company only guaranteed the dividend in case it was earned; that it was involved in litigation with the "big packers," and for that reason could not pay dividends. He thereafter several times renewed the notes held by the bank, of which those here involved are the last renewals. He testified that, at the time he executed the notes in controversy, he did not know that the representations made to him at the time he purchased the stock were not true, and that the officers of the bank told him they had bought the notes from the packing company at their face, and in the regular course of business. Appellees introduced in evidence, as a part of the cross-examination of appellant, the original petition in this action and a petition filed by appellant in the state court of Nebraska against the Skinner Packing Company. In the original petition filed herein, appellant, after setting out the representations above referred to,

alleged that "sometime in the month of February, 1921, plaintiff first suspected the truth of the said representations * * * and immediately went to the offices of the said Skinner Packing Company at Omaha, Nebraska, and notified the said Paul F. Skinner, president of the Skinner Packing Company, that he elected to rescind his contracts for the purchase of stock in said company on account of fraud in the sale of said stock," and offered to return everything he had received, and demanded the return of his money and notes. Subsequently, appellant, by an amendment to the petition, substituted for the foregoing averment an allegation that in February, 1921, "plaintiff first suspected the truth of the said representation * * * that, in the purchase of stock in said company, plaintiff was guaranteed 8 per cent interest on his investment therein." The petition was verified by appellant.

In the petition in the Nebraska case, substantially the same alleged fraudulent representations here relied upon were pleaded, and it was alleged that, "promptly upon learning that said representations and statements made to the plaintiff by said stock salesmen and officers and agents of the said Skinner Packing Company, as aforesaid, were false and fraudulent, which was in the spring of 1921," the plaintiff notified the president of the company that he "elected to rescind his contracts for the purchase of stocks in said company, on account of fraud and false representations made to him in connection with the procuring of the same." This petition was verified by appellant's attorney, and appellant testified that he never read it.

Aside from the allegations in the original petition herein and the petition in the Nebraska action, there is no direct contradiction of appellant's testimony that he had no knowledge of the falsity of any of the representations made to him, except in regard to the guaranteed dividend, until in June, 1923. This action was commenced in October, 1923.

It is well settled that, where the maker of a note procured by fraud, with knowledge of the fraud, or knowledge of such facts as would put him upon inquiry which, if pursued with reasonable diligence, would have disclosed the fraud, executes a renewal of the note, he thereby waives the right to rely upon the fraud in the original transaction. It is, in effect, an election on his part to affirm the contract, with knowledge of the fraud.

*Farmers & Merch. Sav. Bank v. Jones,* 196 Iowa 1071; *Grimes Sav. Bank v. McHarg,* 197 Iowa 1393; *Sullivan v. Gaul,* 198 Iowa 630; *Anthon St. Bank v. Bernard,* 198 Iowa 1345; *National Bank of Decorah v. Robison,* 199 Iowa 1044; *Home Sav. Bank v. Heizer,* 200 Iowa 793; *State Sav. Bank v. Deal,* 200 Iowa 490; *Euclid Ave. St. Bank v. Nesbit,* 201 Iowa 506.

We are of the opinion that the question whether appellant, at the time he executed the notes here involved, had such knowledge of the alleged fraud practiced upon him, or knowledge of such facts as would put him upon inquiry, and thereby waived the fraud, was a question that should have been submitted to the jury, under proper instruction.

The allegation of the original petition herein that appellant suspected the fraud in 1921 was superseded by the amendment to the effect that he then only suspected that the 8 per cent dividend was not guaranteed. In this situation, the original allegation was not conclusive upon him, but was admissible against him as an admission, to be considered in connection with his explanation. *McClure v. Great Western Acc. Assn.,* 141 Iowa 350, and cases cited. The petition in the Nebraska case was in no stronger position. The weight to be given to these admissions, in connection with the appellant's explanation, was a question for the jury.

2. WITNESSES: impeachment: inconsistent statements.

It is conceded that appellant had knowledge, before renewing the notes, that the company was not paying dividends. This was but one of several alleged fraudulent representations, and while a most material fact, from the standpoint of the stockholder, it was not the only representation of fact upon which appellant claimed to have relied. It might well be that, if the company had continued to pay dividends, other alleged misrepresentations would have been relatively unimportant to the appellant, and he would have been content with his purchase. But it does not follow, necessarily and as a matter of law, that, by renewing the notes after discovering the falsity of that representation, he thereby, if still in ignorance of other fraud practiced upon him, waived all other actionable fraud. *Sullivan v. Gaul,* supra. Nor do we think his knowledge that dividends were not being paid after 1918, when considered in connection with his conduct at that time and the explanation given him, presents such a situation as

3. BILLS AND NOTES: fraud: partial knowledge: effect.

that it should be said, as a matter of law, that he was bound to know or ascertain the falsity of other alleged representations made to him. There was testimony that he took action when the company failed to respond to a letter of inquiry concerning the failure to pay dividends, and was then given an explanation of the failure by both the president of the company and the appellee Danbom. Whether this knowledge, in view of the explanation, was sufficient to put him upon inquiry and charge him with knowledge of what a reasonably diligent inquiry would have revealed, or whether he was justified, in the exercise of reasonable caution, in accepting the explanation, desisting from his efforts to enforce a rescission on that ground, and renewing his notes, were questions peculiarly within the province of the jury. Some other facts and circumstances appear in the record, but they are insufficient, with those to which we have referred, to sustain the direction of a verdict.

II.   It is said that the motion was properly sustained because there is no evidence of rescission, and that appellant did not offer to return to the bank the notes for which the notes in

4. BILLS AND NOTES: execution: rescission: status quo.

suit were renewals. There was evidence that in June, 1923, appellant demanded of the attorney for the packing company, who had notified him about certain notes still in the hands of the company, the money and notes given by him to the company, and offered to return everything he had received. There was also evidence that he demanded of the bank the return of the notes in question, and that at that time the bank still retained the notes for which the renewals had been given, and then surrendered the canceled notes. Moreover, if appellant had a good defense to the notes in controversy, or was entitled to recover them, his defense and his right were equally good as to the prior notes.

III.   As we have said, there was evidence of a demand for the notes before suit was brought. But see *Kennedy v. Roberts,* 105 Iowa 521; *Sievertsen v. Paxton-Eckman Chem. Co.,* 160 Iowa 662.

IV.   Some contention is made that the representations relied upon were not of matters of fact, but mere expressions of opinion, and were not actionable. Without discussing them in detail, it is sufficient to say that there is no merit in the contention, as a whole.

V. Numerous errors are assigned in the exclusion of testimony. In view of the necessity for a reversal for the failure to submit the cause to the jury, these require but brief attention.

**5. EVIDENCE: similar facts and transactions: fraud.** Appellant was denied the right to show representations made by the stock salesman and the officers of the bank to others at about the same time, to induce purchases of stock. Such testimony was admissible upon the question of fraudulent intent. *Henderson v. Ball,* 193 Iowa 812; *Newton v. Young,* 197 Iowa 1143.

Appellant was unduly restricted in his efforts to show that he had no knowledge, at the time the notes in suit were executed, of the falsity of certain representations alleged to have been made to him.

Complaint is made of the exclusion of parts of the deposition of the witness Simmons. The record does not disclose what the excluded answers were, nor what it was proposed to show by the witness. No error appears.

Other questions presented by the assignment of errors relate to repetitions of testimony elsewhere in the record, or involve no prejudicial error.

For the reason indicated, the judgment is reversed, and the cause remanded.—*Reversed and remanded.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.