ARKANSAS POWER & LIGHT COMPANY *v.* CUMMINS.

Opinion delivered June 9, 1930.

*Elmer Schoggen* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*G. W. Clark* and *R. W. Robins,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment of $100 for damage to appellee's automobile and $10,000 for injury to appellee resulting from a collision between his automobile and one of appellant's street cars at the intersection of Broadway and Ninth Streets in the city of Little Rock, Arkansas.

Appellee alleged that the damage to his automobile and the injury to himself were caused by the failure of appellant's motorman to stop the street car, as required by law, before entering Broadway from the east, and to keep a lookout or sound an alarm, or to stop the street car when the perilous position of appellee's automobile was observable. Appellee also alleged that he was permanently injured about the back, chest, lungs, and other parts of the body, rendered permanently incapable of any sort of gainful labor, and caused to suffer great pain of body and anguish of mind to his damage in the sum of $25,000. Also alleged damage to his automobile in the sum of $200.

The allegation of negligence and the extent of the injuries were controverted, and the affirmative defense of contributory negligence was interposed by appellant.

The collision occurred at 6:30 o'clock on the morning of November 27, 1928, at which time it was raining and dark. The headlight of the street car as well as the lights in the car were on and in good condition. The headlights of the automobile were on and in good condition. Appellee was traveling south on Broadway, being driven by his son, who was eighteen years of age, with a load of produce which he was taking from his farm in Faulkner County to sell at the curb market in Little Rock. Appellant's motorman was traveling west on said street towards the outskirts of the city, without passengers. At the intersection of the east side of Broadway and the north side of Ninth Street a brick church with high steps is located which obstructs the view to some extent in approaching the street crossing from the east or north. There were only three eye-witnesses to the collision, appellee, his son, and the motorman.

Appellee testified that as they entered Ninth Street slowly they were looking both ways, but could not see

the street car approaching from the east on said street until it was near the stop block and until within about three or four feet of the street car track on account of the brick church building; that his automobile had good brakes; that the street car was approaching at a speed of about twenty or twenty-five miles an hour, and, failing to heed the stop block, as they expected it to do, ran into them just as their front wheels crossed the first rail and knocked their car over against the west curb of Broadway; that, had the motorman stopped at the stop signal, they would have had ample time to cross the track before the street car could start again and reach them; that they did not run into the street car, but that the street car ran into his car without slowing down after it passed the stop block; that the impact threw appellee out of the car onto the street, resulting in painful injuries to his body and particularly to his chest, shoulders, and back that produced pneumonia and confinement to his bed for one hundred and five days and permanent injuries which will prevent him from earning a livelihood; that the outer tissue of his lungs was punctured by a broken rib, causing him to expectorate much blood and matter for a long time; that the injury in the chest produced a bone growth that resulted in a stiffness in the neck and shoulders and a nervous affection in his lower limbs which produced an unsteadiness in his step; that at the time of the injury he was forty-two years old, had an expectancy of twenty-five years, and was earning on an average of $3 per day; that the left front wheel was torn down, the tire and inner tube torn up, the radiator torn up, the steering wheel torn up, the motor knocked sidewise out of the car, a big hole knocked in the front tire, the carburetor, two spark plugs, and fan wheel torn off, the left fender torn off, the left end of the bumper torn off, and the bumper bent back toward the right or west and the frame of the car bent. He also testified, over the objection and exception of appellant, that the total damage to his automobile was about $200, and that his son was a careful driver.

There was no material difference between the testimony of appellee and his son, Velous Cummins, the driver of the car, who testified that as the street car approached there was no bell or gong sounded, and that, when he first saw same, it was within fifteen or twenty feet of the stop block, and that he was about six feet from the street railway track; that he could and would have stopped within that distance, had he known or believed the street car motorman would not have stopped at the stop block, but, when he discovered that he had ignored the stop block and failed to check his speed of twenty or twenty-five miles an hour, he was practically upon the track, and could not stop before the street car struck him; that he continued on his way after first seeing the street car because he relied upon the motorman to obey the traffic law at the stop block before entering Broadway. He was recalled in the afternoon, and denied that in testifying during the morning he had said he could not see the street car until it got to or near the stop block, but, as a matter of fact, he did see it about twenty feet east of the stop block.

E. P. Chastain, the motorman, testified that he was running the street car at a speed of ten or twelve miles an hour as he approached Broadway, and that he stopped the car at the stop block on the east side of Broadway, and, after looking north and south for autos or pedestrians, and seeing neither, he proceeded at an ordinary speed west, and was almost across Broadway when he observed appellee's automobile traveling south at a rate of ten or twelve miles an hour; that it ran head end into the street car, striking it with full force; that he immediately applied his emergency brakes, and, as soon as the car stopped, he went back and assisted in pushing the automobile away from the car and around to the west; that appellee, his wife, and son were sitting in the front seat, and a little girl in the back seat; that they explained to him that the collision was due to the worn condition of the brakes on appellee's automobile.

Appellee's wife and son denied making the statement, and said they charged the motorman with failing to stop at the stop block and that he walked away without denying the charge.

Dr. A. G. McGill testified, over the objection and exception of appellant, that the injuries to appellee's back resulted in the disturbance of the reflexes in the lower limbs causing an unsteadiness when on his feet, and also resulted in a disturbance in his bladder and rectum.

Appellant first contends for a reversal of the judgment, upon the alleged ground that there is such a variance between the testimony of Velous Cummins given in the morning and that given in the afternoon that he is wholly discredited and his testimony worthless, hence the court should have disregarded it and instructed a verdict for appellant upon the theory that the motorman's evidence relative to the collision was true and undisputed. We have read the testimony of Velous Cummins very carefully and find no material conflict in it, but, even if there were, appellee adhered to his own statement throughout the trial, and his testimony contradicts that of the motorman.

It is also insisted that the testimony introduced by appellee relative to the collision is contrary to the physical facts that the spring under the middle of the car was displaced and found on the ground after the collision. There is some testimony tending to show that the only way the spring could have been displaced was by a heavy jar in the center of the car opposite the spring; that, had the front end of the car been raised by a collision, the effect would have been to cause the body of the car to press down the tighter on the spring and hold it in place instead of disconnecting and loosening same so as to cause it to fall out on the ground. The testimony of the motorman is out of harmony with the physical facts that no indentation was found upon the side of the street car where the automobile is supposed to have

struck it, and that the lights on the auto were not injured, but that the bumper thereon was knocked loose on the left side and bent around toward the right, and that the left front wheel was knocked down and the right one uninjured except for a hole in the tire. In fact, the injury to the automobile from the physical appearances indicated that it was struck on the left front end, which could not have been true had the automobile run squarely into the side of the street car. Again, there is nothing in the testimony of appellant to indicate that the front end of the car was lifted up in the collision so as to press the center of the car down on the spring and hold it in place. It was not conclusively shown that a jar at the front end of the car could not have displaced the spring and caused it to fall out. The testimony is in conflict as to the point of contact in the collision as well as the cause thereof, so the court correctly refused to direct a verdict for appellant.

The appellant next contends for a reversal of the judgment because the court allowed Dr. A. G. McGill to testify to nerve disturbances in the lower limbs and in the bladder and rectum resulting from the injuries to appellee's back, upon the ground that nerve disturbances were not specifically alleged in the complaint. The complaint alleged injuries to the back. Dr. McGill testified that the nerve disturbances originated in the spinal injury, the injury to the fourth lumbar vertebrae. The rule is that the symptomatic conditions resulting from an alleged injury are relevant and competent. *Arkansas Power & Light Co.* v. *Toliver,* 181 Ark. 770, 27 S. W. (2d) 985, decided by this court on March 12, 1930.

Under this rule the nerve conditions testified to by Dr. McGill were admissible, although not specifically alleged in the complaint.

Appellant next contends for a reversal of the judgment because appellee was permitted to introduce a pamphlet of the traffic ordinances of the city of Little Rock, certified to by the city clerk, making Broadway

from Markham to Twenty-fourth Street a boulevard, and requiring street car drivers to bring their street cars to a full stop when appoaching boulevards. The complaint alleged, and the answer admitted, that the law required appellant to stop its street cars on the east line of Broadway, so no prejudice resulted to appellant, even though the ordinances were not properly proved. Under these circumstances, it is unnecessary to decide whether the ordinances were properly proved or not.

Appellant next contends for a reversal of the judgment because appellee was allowed to state that his son was a careful driver. Where negligence is charged, the care and caution of the one charged therewith is relevant as a circumstance tending to disprove negligence. Likewise, it would be admissible to show that a person charged with negligence was a reckless driver as a circumstance tending to prove the fact.

Appellant next contends for a reversal of the judgment because appellee testified that his automobile was damaged to the extent of $200. Before he testified to this estimate of his damages, he described the injuries to the automobile in detail, and, after doing so, based his opinion as to the amount of the damage upon his observation of the car. A man of ordinary intelligence could form an opinion of the amount of damage done to a car by inspecting same. His opinion in this regard is not such an opinion as must be reached by one from expert knowledge before admissible as evidence.

Appellant next contends for a reversal of the judgment because the verdict and judgment are excessive. The suffering resulting from the injury was acute and intense, and the injuries are permanent. They destroyed his earning capacity entirely. Considering his expectancy, the intense suffering he endured, and his earning capacity, we do not think the verdict is excessive.

Appellant next contends for a reversal of the judgment because the court refused to give its requested instruction No. 7. The instruction is as follows:

"You are instructed that street cars, from the necessities of the case, must have and do have the right-of-way on their tracks, where they alone can travel, and this right-of-way is superior to that of ordinary vehicles and travelers. This paramount or better right to the use of their tracks does not give them the right to exclude travelers, and these may move along or across the tracks at any time and place where such traveling does not interfere with the progress of the street cars. Where there is conflict between a street car and an automobile, the automobile must yield the right-of-way. This requirement of the law is to subserve the public convenience and accommodation and it is your duty to bear these reciprocal rights in mind in determining the care required of the respective parties at the crossing."

It is only when the tracks of the street railway company are in actual use that the street car company has a paramount and preferential right of way over the tracks. The instruction ignores the duty of appellant to have stopped his car at the stop block on the east side of Broadway. Travelers passing up and down Broadway had a right to rely upon a compliance of the traffic law by the street car company and to pass up and down Broadway during the stop. The street railway had no paramount or preferential right to the use of the track when violating the traffic law, so the instruction is erroneous, in that it states that an automobile must yield the right of way where there is a conflict between it and the street car absolutely and in any event. It can only be true when the street railway is using the particular portion of its track in question lawfully and not when it is violating the law in the use thereof.

Appellant next contends for a reversal of the judgment because the court refused to give its requested instruction No. 8, which is as follows: "If the driver of the plaintiff's automobile approaching a street car crossing in the exercise of ordinary care could see that a collision with an approaching car was inevitable, or highly

probable, unless the motorman stopped the car, then it was the duty of the driver to stop and let the street car pass before endeavoring to cross, so as not to delay or impede its passage."

This instruction was also erroneous because it ignored the fact that appellee was traveling a boulevard or preferred street under the traffic ordinance which required appellant to stop its street car before entering Broadway. Appellee's duty to look and listen for approaching street cars was correctly submitted to the jury in other instructions.

Appellant next contends for a reversal of the judgment because the court refused to give its requested instruction No. 22, which is as follows: "The court instructs you that if you find from the evidence that the infirmity of the plaintiff was due to one of two causes, one of which could involve negligence on the part of the defendant, the other only an accident for which the defendant is not liable, then, under the law, it would be your duty to adopt a theory which would relieve the defendant from any charge of negligence, and therefore it would be your duty under such circumstances to return a verdict for the defendant."

This instruction was sufficiently covered by instruction No. 10 given by the court and other instructions of like tenor and effect.

Appellant next contends for a reversal of the judgment because the court refused to give its requested instruction No. B, which contained section 43 of the Acts of the General Assembly of Arkansas of 1927 (page 753), specifying the kind of brakes with which motor vehicles operated upon highways shall be equipped, and telling the jury that, if appellee's automobile was not thus equipped, and his failure to so equip it contributed to bring about the collision that caused the injury, appellee would not be entitled to recover.

Appellant requested, and the court gave, instruction No. A upon the subject of contributory negligence which

told the jury appellee could not recover if his car was being operated without proper brakes such as would enable him to control the car, and that, if the collision was caused entirely or in part by such negligence, appellee could not recover. Instruction A was a correct instruction on contributory negligence, and was responsive to the evidence in the case. The evidence pro and con upon whether the automobile had brakes by which it could be controlled was general in its nature. The evidence of appellee was to the effect that it had such brakes and that of appellant to the effect that the brakes were worn out. No attempt was made to show that the automobile was not equipped with the kind of brakes required by the act referred to, and so its requested instruction No. B was abstract in part, and should not have been given. It should not have been modified and given because the parts thereof not abstracted were fully covered by appellant's instruction No. A, which was given by the court.

Appellant next contends for a reversal of the judgment because the court erred in refusing to give its requested instruction No. 14, which is as follows: "You are instructed that the motorman in the operation of defendant's car was not required to anticipate negligence, if any, on the part of the driver, in the operation of the plaintiff's automobile. If you find from the evidence that the defendant's street car reached and entered the intersection before the automobile of the plaintiff, the motorman had a right to assume that the driver of plaintiff's automobile would allow him to cross the intersection in safety, and that the driver would not afterwards enter the intersection with his car beyond control, so as to bring about a collision."

This instruction is inherently erroneous because it assumes the motorman entered Broadway in a lawful manner and at a reasonable rate of speed. It wholly ignored the testimony tending to show that he himself ran over the stop signal and entered Broadway at a speed of twenty or twenty-five miles an hour. If, as

a matter of fact, the motorman ran over the signal and entered Broadway at a reckless and dangerous rate of speed, he had no right to assume that pedestrians or automobiles could or would yield him right-of-way. Under such circumstances, they likely would not have had time to do so.

Appellant's next contention for a reversal of the judgment is that the court erred in refusing to give its requested instruction No. 5, which is as follows: "Failure of the motorman to sound his gong, if you find from the evidence that he did fail to sound it, is not negligence of itself so as to make the defendant company liable, if you further find from the evidence that the driver of plaintiff's car had knowledge of the approach of the car before reaching the street car tracks."

Appellee did not request and the court did not instruct the jury that the failure of the motorman to sound the gong as the street car approached Broadway would constitute negligence on his part, so appellant is in error in arguing that the jury was left to infer that, if the gong was not rung, appellee was entitled to recover. Even though such an inference might be drawn from the evidence, the instruction, in the form requested, was erroneous.

To have observed the street car approaching before it reached Broadway would not have been notice to appellee that the motorman would disregard the stop block. The instruction wholly ignored the duty imposed upon the motorman to stop the street car at the stop block as he entered Broadway. For this reason it was proper to refuse to give it.

No error appearing, the judgment is affirmed.

The CHIEF JUSTICE and MEHAFFY, McHANEY and BUTLER, JJ., concur.

SMITH and KIRBY, JJ., dissent.