**AGLER v SCHINE THEATRICAL CO INC**

Ohio Appeals, 3rd Dist, Van Wert Co

No 151.   Decided February 25, 1938

Conn & Stroup, Van Wert, Thane M.
Spahr, for plaintiff-appellee.
Hoke & Wright, Van Wert, for defend-
ant-appellant.

## OPINION

By THE COURT:—

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Var Wert county, Ohio, in an action for damages for personal injuries, pending in said court wherein Bernice Agler was plaintiff and Schine Theatrical Corporation, Belpik Theatre Corporation and Schine Chain Theatres of Ohio, Inc., were defendants. Schine Theatrical Corporation and Schine Chain Theatres of Ohio, Inc., were dismissed as parties defendant to the cause before the same was submitted to the jury. The jury returned a verdict in favor of plaintiff against Belpik Theatre Corporation and judgment was duly entered on the verdict and it is from this judgment that this appeal is taken by Belpik Theatre Corporation.

The appellant assigns and argues in its brief three claimed errors, as follows:

First: Error in permitting plaintiff to show that after the accident alterations or changes were made in the sign board and its use.

Second. Error in admission of testimony of drugless physician as an expert and X-ray photography and the reading of X-ray prints.

Third. Error in that the verdict is excessive in amount and rendered under passion and prejudice.

These errors will be considered in the order mentioned.

1. The injuries for which plaintiff was awarded damages were caused by an easel sign board owned and maintained by the defendant Belpik Theatre Corporation on the sidewalk in a public street adjacent to the place of business of said corporation falling over and striking her. The sign board causing plaintiff's injuries was one of two similar sign board owned and maintained by defendant Belpik Theatre Corporation. After plaintiff sustained her injuries the defendant theatre corporation changed one of said sign board by suspending a chain therefrom to which it attached a cement block which was suspended by said chain from the top of said sign board, this being the sign board which had caused plaintiff's injuries and which was offered in evidence and identified as Exhibit A on the trial of said cause. When the sign board was offered in evidence the chain by which the cement block had been suspended was attached to the sign board but the cement block was not attached.

The evidence which the appellant claims was erroneously admitted related to the changes made in the sign board subsequent to the time the plaintiff was injured thereby. The appellant's objections to the admission of the various items of evidence on this point were all general.

While the evidence mentioned was not admissible for the purpose of proving negligence on the part of the defendant, it was admissible for the purpose of identifying the sign board which was offered in evidence. The objection to the evidence being general and the testimony being admissible for one purpose it was not error for the court to admit it. Village of Lebanon v Schwartz, 4 Oh Ap 173 at pages 175 and 176.

The trial court was not asked at the time to limit the scope of the evidence and no such instruction having been asked the failure to give an instruction limiting the scope of the evidence is not ground for reversal. 1st Thompson on Trials, Second Edition, §693. Brooklyn Street Railroad Company v Kelley, 6 C. C. 155. The first assignment of error is therefore without merit.

2. The second assignment of error relates to the admission of testimony of one Henry Frohnapfel who testified that by profession he was a "Drugless Physician" and was licensed to practice in the State of Indiana as a chiropractor and in naturopathy and had been engaged in the practice of his profession since 1920, attending at least five or six chiropractor schools; and that he had taken from three weeks to three months post graduate work each year since he had been engaged in the practice and had spent fifty or sixty months in training; and had taken his X-ray work in Chicago and had been practicing with an X-ray for five years for the purpose of photographing; and had spent approximately the same number of years in the study of anatomy as is required of physicians; and that sixteen years of his practice had been "confined solely to the structure and anatomy of the body."

The witness further testified that he had observed the plaintiff as her 'doctor since

1932, acquiring her entire case history and treating her both before and after the injury and that he had X-rayed her both before and after the accident, which X-rays are in evidence as exhibits of plaintiff, and that the X-ray pictures were taken with a modern machine and developed by him. The witness was permitted to demonstrate and explain an X-ray picture which he had made of appellee's spine and was permitted to read this X-ray picture as showing a curvature of the spine and he testified that the curvature was caused from the injury to her foot and that this curvature caused the plaintiff· to suffer divers and sundry ailments. He further testified that he had taken his work in X-ray in Chicago and had been practicing with an X-ray for five years.

The appellant apparently bases its contention of the incompetency of the witness on the fact that the witness is licensed in Indiana to practice only chiropractic and naturopothy and is not licensed to practice in the State of Ohio and not qualified to testify as an expert on the matters on which he testified. The appellee, on the other hand, contends that irrespective of whether the' witness was qualified to testify as an expert he was qualified to testify as a skilled witness.

In Chamberlayne Trial Evidence,, Second Edition, page 937, §959, it is stated:—

"There is no precise or positive rule which will determine the qualifications of a skilled witness. He must, of course show himself to be skilled and experienced in the business or profession in which he is engaged and to which the. subject relates. This may be shown by his actual experience and observations, without any intensive study and investigation, without actual or practical experience.' A combination of the two would seem to be preferable, though frequently it is found that it is not always the professional who is best qualified. It may be taken for granted, however, that one who offers'an expert must affirmatively show that he has the knowledge, skill, experience or training adequate to make his judgment an intelligent one, and helpful to the jury. While it is usual to treat all testimony given by witnesses who have special knowledge, by reason of training or education, under the title of 'expert opinion', a distinction may be made between the specially·qualified witness, who has had special opportunities for observation, and the true expert. The specially qualified witness

is not, in fact, an expert and is testifying to facts and not opinion, whereas the expert testifies to opinion. For instance, a lawyer who is asked to testify as to the unwritten law of a foreign jurisdiction is stating what the law is, which is a question of fact. Its value, of. course, lies in the fact that it comes from one who·is specially trained. While the definition is confessedly arbitrary, an expert may be said to be a skilled witness who testifies upon the basis of assumed facts stated in a hypothetical question, while the specially qualified witness is one who testifies to facts based upon his special opportunity of observation."

The testimony of the witness above mentioned tends to show him to be skilled and experienced in anatomy and the taking and reading of X-ray photographs. It also tends to prove that he had special opportunities for observation and the testimony is as to facts in contradistinction to opinion. The witness was therefore a specially qualified witness within the rule above mentioned and as such was competent to testify to the facts to which he testified and the court did not err in admitting this testimony.

3. We will next consider the third contention of appellant, that the verdict is excessive in amount and rendered under passion and prejudice.

The evidence tends to show that the plaintiff was twenty-nine years of age, in good health, and in addition to taking care of her household duties and caring for three small children was earning approximately ten dollars a ·veek canvassing, selling nursery stock. Up to the time of trial the salary she had lost by reason of her inability to work amounted to four hundred dollars. During this period she paid out eighty-eight dollars for household help, and part of the medical bill amounted to eighty-four dollars. She lost _leven pounds. She was on crutches for eleven weeks and has worn a brace since August 17, 1936; had frequent headaches, lost appetite, lost sleep and had numerous pains about ankle, leg, hips and back. That she was nervous at the time of trial; that there was continuous swelling of her foot and ankle and that her foot was swollen when examined on the day before trial; hat she had one of the worst types of sprains, the ligaments on both the inside and outside being torn; that heel and ankle injuries like the one in question are frequently indefinite as to the time of recovery. There is also evidence tending to prove that the injuries caused

a new curvature of the spine of the plaintiff with attendant physical ailments.

There is evidence which to some extent tends to contradict the evidence mentioned but the jury by its verdict in favor of the plaintiff resolved this conflict in her favor and the evidence mentioned is sufficient to support the verdict and it does not appear from the record that the verdict of the jury was influenced by passion and prejudice. This assignment of error is therefore without merit.

Finding no error in any of the particulars specified, the judgment of the Common Pleas Court will be affirmed at costs of appellant.

GUERNSEY, PJ, CROW and KLINGER, JJ, concur.