Defendant-appellant, James C. Brown, appeals a criminal conviction obtained in the Mahoning County Common Pleas Court. Following a jury trial, appellant was found guilty of aggravated murder with a firearm specification.
On August 15, 1995, Richard Taylor and Felicia Scott Briggs were sitting on the steps nearby an apartment located in the West Lake Terrace Apartments, Youngstown, Ohio. Briggs was the aunt of Taylor's girlfriend, Nicole Scott.
Appellant and Robby Shelton approached Taylor and Briggs. Briggs recognized both appellant and Shelton. Briggs spoke with appellant and he stated that he remembered her. (Tr. 84).
A short distance away and in front of another apartment, Sandra James was conversing with Damon Jones. James' boyfriend, Gregory Washington, was standing nearby. James had approached Jones to purchase crack cocaine from him. Jones indicated that he didn't want to go into the apartment after it, so either he or James summoned Taylor over to where they were standing. Taylor went over and indicated to James that he would sell her some crack. He began sifting through some rocks of crack cocaine in the palm of his hand.
Meanwhile, appellant had approached the two, coming very close to Taylor. Appellant reached into his pants and pulled out a semiautomatic handgun. Appellant put the gun to Taylor's head and shot him. Appellant shot Taylor again and Taylor then began to fall to the ground. Appellant then shot Taylor several more times and, subsequently, fled the area. Taylor died as a result of the gunshot wounds.
James was standing directly in front of Taylor. James, Washington, and Briggs all witnessed appellant fire the initial shots. James, standing there in shock, witnessed all of the shots. Washington and Briggs fled in fear after the initial shots.
On September 25, 1995, a complaint charging appellant with aggravated murder was filed in Youngstown Municipal Court. The court held a preliminary hearing on October 3, 1995 and, upon a finding of probable cause, bound the case over to the Mahoning County Grand Jury. On October 27, 1995, the grand jury indicted appellant for the aggravated murder of Taylor along with a firearm specification.
Trial commenced on March 13, 1996. On March 19, 1996, appellant was convicted of aggravated murder with the firearm specification. On March 20, 1996, appellant was sentenced to life imprisonment. This appeal followed.
In his first assignment of error, appellant alleges that:
 "THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO ELICIT, OVER OBJECTION, HEARSAY TESTIMONY RELATING TO THE IDENTIFICATION OF THE DEFENDANT BY DAMON JONES."
One of the defense strategies at appellant's trial was to discredit the state's eyewitnesses and their testimony. In opening statement, appellant's trial counsel stated:
 "* * * And I think you're going to feel at the end of this case, right down in your gut, that these witnesses are incapable of telling the truth, that they have some hidden agenda, just so Mr. Bailey [the prosecutor] does not have to supply any motive as to why or anybody else would have shot Ricky Taylor.
"* * *
 "Maybe if there were all the witnesses, you might have heard a different story, and God only knows the hidden agenda of these witnesses who are going to testify. But believe me, I'm confident by the time they get done testifying, you're going to find severe doubt as to whether or not you can believe these people as to anything they say, what they're trying to pin on Mr. James Brown." (Tr. 48-50)
Appellant's trial counsel continued this theme of "witness collusion" in his cross-examination of Detective Morales. Several eyewitnesses to the shooting were shown photo arrays. Each of them identified appellant as the shooter. Appellant's counsel attempted to attack the reliability and credibility of the photo arrays and the identification of appellant as the shooter. Part of that cross-examination went as follows:
 "Q Because obviously if these people had a chance to talk to each other, that might affect what they knew about the person they were supposed to identify prior to looking at their pictures; wouldn't it?
"A Could have." (Tr. 351)
On re-direct examination of Detective Morales, the state sought to discredit appellant's theory of "witness collusion". It was during this colloquy, appellant argues, that hearsay testimony was elicited. The entire re-direct examination went as follows:
 "Q Detective Morales, defense counsel asked you whether when you asked Sandra James to have Greg Washington come down to talk to them, you hadn't told her not to talk to him about it because it might influence something. When you showed Sandra James and Greg Washington the photographic arrays — do you have State's Exhibits 4 and 5 in front of you there?
"A Here's five. Four.
 "Q Okay. The defendant's position in those two photos, is it in the same position in each photo array?
 "A No. They're in different positions, different pictures.
"Q Are the pictures the same pictures?
"A No, they're different pictures.
 "Q Okay. And they made identifications, each one made an identification from a different array?
"A Yes, sir.
 "Q And defense counsel asked you whether you talked to — about taking a videotaped statement from Robert Shelton.
"A Yes, sir.
 "Q And that was on September 20, I believe you said, of 1995?
"A Yes.
"Q Did you show him any photographs?
"A Yes. We showed him a photo array.
 "Q State's Exhibit No. 4, is that the array that you showed to Robert Shelton?
"A Yes.
"Q And did he make any identification?
 "A Yes, he picked out James Brown, number one in the top row.
 "Q And defendant's counsel asked you about talking to Damon Jones. You weren't sure of the date. Could that have been November 3rd of 1995?
 "A Okay, it could have been. I'm not sure of that date when it was.
"Q Did you show him any photographic array?
 "MR. CURRY: Objection, Your Honor, to this entire line of questioning.
"THE COURT: Overruled.
"A Yes, sir.
"Q And did he make any identification?
 "A Yes, he did. He picked out James Brown on the photo array.
 "Q Now, I'm going to hand you what's been marked for identification as State's Exhibit No. 39 for identification, ask you to look at it. And you recognize that photographic array?
 "A Yes. This is the photo array that I showed to Damon Jones when he came in.
"Q Whose writing is that on the back?
 "A I wrote down the time and date that he came in. And then I had Damon Jones initial it and date it when he came in.
"Q What was that date?
"A The date he came in was November 3rd, 1995.
 "Q And where is the defendant's position in the photographic array?
"A Okay. He's the second person on the top row.
"Q Okay. Thank you." (Tr. 355-357)
Appellant argues that Jones' out of court identification of appellant was utilized as substantive proof of the identity of the person who shot Taylor and, as such, constituted inadmissible hearsay. Appellant places special emphasis on the context in which the asserted error arose. When Detective Morales first interviewed Jones, he denied any knowledge of the identity of the shooter. (Tr. 358). Taylor was killed on August 15, 1998. It was not until November 3, 1995, that Jones picked appellant out of the photographic array. Appellant asserts that these circumstances call into question the reliability of Jones' identification. Jones did not testify at trial. Therefore, appellant argues that he was unable to cross-examine Jones and that admission of Jones' testimony as hearsay constituted error.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the matter asserted." Evid.R. 801(C). Appellee asserts that the hearsay identification testimony elicited from Detective Morales was not admitted to prove that appellant was the shooter, but that it was admitted to discredit defense counsel's theory of witness collusion. Since appellee apparently did not introduce the statements to prove the truth of the matter asserted, the trial court did not abuse its discretion when it overruled appellant's hearsay objection. See State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus (admission of relevant is within a trial court's discretion). Appellee was seeking to demonstrate that different pictures of appellant were used in the photographic arrays and that appellant's picture was placed in different locations in the arrays. (Tr. 355-357). Therefore, the identification made by Damon Jones, as elicited from Detective Morales, was not admitted to prove the truth of the identification, but to demonstrate that the arrays were different and not subject to the influence of any witness upon another. Moreover, even if we were to assume that the statements also had some hearsay effect, defendant waived any error by not requesting a limiting instruction. Evid.R. 105 Staff Note, citing Agler v.Schine Theatrical Co. (1938), 59 Ohio App. 68. Additionally, any error was not prejudicial. On recross examination by appellant's trial counsel, Detective Morales indicated that Jones did not witness appellant shoot Taylor, he simply identified appellant as being in the area immediately prior to the shooting. (Tr. 358).
Accordingly, appellant's first assignment of error is without merit.
In his second assignment of error, appellant alleges that:
 "THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN CONTRAVENTION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND OHIO CONST., art. I, §§ 1, 10, and 16."
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance.Strickland v. Washington (1984), 466 U.S. 668, 687; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. Strickland, supra, at 696; Bradley, supra, at paragraph three of the syllabus.
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel."State v. Carter (1995), 72 Ohio St.3d 545, 558. Rather, trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675.
Appellant maintains that whether his trial counsel was reasonably effective must be determined in context of the issues presented at trial. State v. Carpenter (1996), 116 Ohio App.3d 615,622. The crux of appellant's defense was attacking the credibility of the identifying witnesses. Appellant argues that "[a]ny objective standard of reasonable representation would therefore require that defense counsel be ever vigilant in guarding against impermissible attempts to bolster the identification testimony offered by the state." (Appellant's Brief, p. 12). Appellant highlights numerous instances where his trial counsel allegedly failed in this respect.
As was discussed under appellant's first assignment of error, appellee elicited from Detective Morales on redirect examination that Damon Jones had identified appellant from a photographic array. See Tr. 355-357, supra. Prior to the questions relating to Damon Jones' identification of appellant, appellee elicited from Detective Morales that Robert Shelton had also picked appellant out of a photographic array. See Tr. 355-357, supra. Robert Shelton did not testify at trial.
Appellant cites to State v. Nichols (1996), 116 Ohio App.3d 759, in support of his contention that his trial counsel's failure to object to this testimony constituted ineffective assistance of counsel. Nichols held that "where resolution of factual issues turns solely upon the credibility of witnesses, failure to object to hearsay testimony which bolsters the credibility of witnesses constitutes ineffective assistance of counsel." Id. at 765.
As appellee correctly notes, appellant's reliance onNichols is misplaced. Nichols involved an identification that was made well over one year after the incident took place. Id.
In this case, the identification was made a little over one month following the shooting of Taylor. (Tr. 362).
In contrast to Nichols, the hearsay identification testimony elicited from Detective Morales was not admitted to prove that appellant was the shooter, it was admitted to discredit defense counsel's theory of witness collusion, a theme not present inNichols. Appellee was seeking to demonstrate that different pictures of appellant were used in the photographic arrays and that appellant's picture was placed in different locations in the arrays. (Tr. 355-256). The identifications made by Damon Jones and Robert Shelton, as elicited from Detective Morales, were not admitted to prove the truth of the identification but to demonstrate that the arrays were different and not subject to the influence of any witness upon another (i.e., that they were "witness collusion" proof).
Furthermore, it cannot be said that "no objection whatsoever was made" to Detective Morales' testimony of Robert Shelton's identification of appellant. See Appellant's Brief, p. 12. When Detective Morales' testimony turned to the identification made by Damon Jones, appellant's trial counsel objected to the "entire line of questioning". See Tr. 355-357, supra.
Next, appellant argues that his trial counsel permitted the jury to consider propensity evidence in the form of his alleged conviction for another murder. Appellant points to testimony his trial counsel elicited on the cross-examination of appellee's witness, Felicia Briggs. Appellant's trial counsel asked Briggs when she told her husband about witnessing Taylor's shooting. In response, Briggs stated:
 "I told him when I seen the news. Me and my husband was sitting there watching television, and that's when I seen Jabu [appellant] convicted of the other murder and that's when I told him." (Tr. 154)
Appellant's trial counsel continued his cross-examination without requesting any curative action by the trial court.
Appellant argues that, at a minimum, his trial counsel should have requested a limiting instruction that would have prohibited consideration of appellant's alleged murder conviction as substantive evidence of his guilt in the murder for which he was then presently on trial. State v. Nichols
(1996), 116 Ohio App.3d 759, 766.
Appellant also complains of other hearsay testimony elicited from Felicia Briggs. Briggs testified on cross-examination by appellant's trial counsel that Robert Shelton had told her that Maurice Trammel had paid appellant to kill Taylor. (Tr. 157). Appellant's trial counsel made no request that the testimony be stricken.
Appellant complains of testimony elicited from the victim's mother, Shelly Taylor, by appellee. On direct examination, Shelly Taylor testified that Maurice Trammel and Darryl Mason "sell drugs" for a living and also "rob and kill" people. (Tr. 63). Appellant argues that this testimony was irrelevant and objectionable. Appellant argues that his trial counsel's failure to object to this testimony constituted ineffective assistance of counsel.
In each of the foregoing instances appellant has failed to demonstrate how any prejudice arose from his counsel's performance. Moreover, in light of the overwhelming evidence of appellant's guilt, there is no reasonable probability that the result of the trial would have been different had appellant's counsel pursued an alternative course of action with respect to each instance of asserted error.
Accordingly, appellant's second assignment of error is without merit.
In his third assignment of error, appellant alleges that:
 "THE CUMULATIVE, PREJUDICIAL AFFECT [sic.] OF THE IMPROPER EVIDENCE PRESENTED DURING THE APPELLANT'S TRIAL DEPRIVED THE APPELLANT OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW."
Appellant argues that seven instances of error in his trial constitute cumulative error sufficient to violate his right to a fair trial:
 "1. Hearsay testimony relating to an out of court identification made by non-testifying declarant, Robert Shelton, on September 20, 1995. (T.P. 356)
 "2. Hearsay testimony relating to an out of court identification made by non-testifying declarant, Damon Jones, on November 3, 1995. (T.P. 356, S.X. 39)
 "3. Hearsay testimony from Felecia Briggs (given on cross-examination) that she had been told by Robert Shelton that Maurice Trammel paid the Defendant to kill Ricky Taylor. (T.P. 157)
 "4. Irrelevant testimony from Shelly Taylor, the decedent's mother, that Darryl Mason and Maurice Trammel 'sell drugs' and 'rob and kill people' for a living. (T.P. 63)
 "5. Irrelevant testimony from Greg Washington that Quentin Trammel, Maurice's brother, told him to tell Sandra James to stay out of it. (T.P. 265)
 "6. Irrelevant testimony from Melvin Green that Green had been threatened by Maurice Trammel. (T.P. 272)
 "7. Irrelevant propensity testimony from Felecia Briggs that she had seen the Defendant on TV for that 'other murder.' (T.P. 97) The jury was instructed to disregard this testimony. However, during cross-examination, Ms. Briggs prejudicially reiterated that she saw on the news that the Defendant had been 'convicted' of that 'other murder.' " (Appellant's Brief, p. 19).
In State v. DeMarco (1987), 31 Ohio St.3d 191, the Ohio Supreme Court articulated the cumulative error doctrine at paragraph two of the syllabus:
 "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial."
However, as appellee correctly notes, the doctrine is not applicable when the appellant fails to demonstrate that there were multiple instances of error. State v. Garner (1995),74 Ohio St.3d 49, 64.
In the first two instances of asserted error, appellant complains of hearsay testimony relating to the out of court identifications made by Robert Shelton and Damon Jones. However, as discussed under appellant's first and second assignments of error, said testimony was not hearsay because it was not admitted to prove the truth of the matter asserted.
In the third instance of asserted error, appellant complains of testimony elicited from Felicia Briggs relating to actions and threats allegedly made by Maurice Trammel. Felicia Briggs' testimony was elicited by and emphasized by appellant's own counsel. (Tr. 157). Furthermore, part of the appellant's strategy at trial was to direct attention away from his alleged involvement in the shooting to the possibility of another suspect's involvement. Therefore, it was to appellant's advantage that his trial counsel not object to negative testimony about Maurice Trammel.
In the fourth instance of asserted error, appellant complains of irrelevant testimony elicited from Shelly Taylor relating to Darryl Mason and Maurice Trammel. Appellant's counsel made no objection to Taylor's testimony. Additionally, said testimony was favorable to appellant's strategy by diverting attention away from his involvement and focusing it on the criminal behavior and possible involvement of other persons.
In the fifth instance of asserted error, appellant complains of irrelevant testimony elicited from Greg Washington. Appellant's counsel objected to the testimony and the trial court sustained the objection.
In the sixth instance of asserted error, appellant complains of irrelevant testimony elicited from Melvin Green. Appellant's counsel made no objection to said testimony.
In the seventh instance of asserted error, appellant complains of statements made by Felicia Briggs relating to another murder allegedly committed by appellant. (Tr. 97). Appellant's trial counsel objected to the testimony and the trial court judge advised the jury to disregard the statement. (Tr. 98). Later, when Briggs testified that she had seen appellant on the news for another murder, appellant's counsel made no objection.
As discussed under appellant's first and second assignments of error, the first two instances of error asserted by appellant were found not to be error. Appellant invited the third instance of asserted error. Appellant did not object to the fourth instance of asserted error, thereby waiving his ability to assert it as error on appeal. In the fifth instance of asserted error, appellant's counsel objected to the testimony and the trial court sustained the objection. Appellant did not object to the sixth instance of asserted error, thereby waiving his ability to assert it as error on appeal. In the seventh instance of asserted error, appellant's counsel's objection to the first occurrence was sustained and appellant's counsel made no objection to the second occurrence. Therefore, appellant has failed to demonstrate the existence of multiple instances of error and the doctrine of cumulative error is inapplicable. Garner, supra.
Accordingly, appellant's third assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ___________________________ Gene Donofrio Presiding Judge